**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE CEDAR REALTY TRUST, INC. PREFERRED SHAREHOLDER LITIGATION | Case No. 8:22-cv-1103-GLR<br><br>**HEARING REQUESTED** |

**THE CEDAR DIRECTORS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I AND II
<u>OF THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

ARGUMENT ...................................................................................................... 6

I.      COUNT I SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE THE DIRECTORS ARE NOT PARTIES TO THE ARTICLES SUPPLEMENTARY. ...................................................................................... 6

II.     COUNT II SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY........................................................... 8

      A.      Preferred Stockholders Are Not Owed Anything Beyond Their Contractual Rights, Which Have Not Been Violated. ........................... 8

      B.      Even If The Directors Owed The Preferred Stockholders Non-Contractual Duties, Their Conduct Would Be Protected By Maryland's Statutory Business Judgment Rule. ................................................................... 12

III.    THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.................................. 19

CONCLUSION................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Development Co. v. Harrison*,
  76 A.2d 566 (Md. 1950) ............................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................6

*Blue Chip Cap. Fund II Ltd. P'ship v. Tubergen*,
  906 A.2d 827 (Del. Ch. 2006)....................................................................................11

*Boland v. Boland*,
  31 A.3d 529 (Md. 2011) .............................................................................................13

*Curtis G. Testerman Co. v. Buck*,
  667 A.2d 649 (Md. 1995) .............................................................................................7

*Daniyan v. Viridian Energy LLC*,
  2015 WL 4031752 (D. Md. June 30, 2015)...............................................................19

*Edenbaum v. Schwarcz-Osztreicherne*,
  885 A.2d 365 (Md. Ct. Spec. App. 2004) .............................................................2, 7

*Equity-Linked Invs., L.P. v. Adams*,
  705 A.2d 1040 (Del. Ch. 1997) ..................................................................................11

*Frederick Hsu Living Tr. v. ODN Holding Corp.*,
  2017 WL 1437308 (Del. Ch. Apr. 14, 2017) ..............................................................9

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
  2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ...........................................................14

*Herman v. Green*,
  234 F.3d 1262 (2d Cir. 2000).......................................................................................8

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  2021 WL 2401641 (D. Md. June 11, 2021)...............................................................19

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  543 F. Supp. 3d 96 (D. Md. 2021) ..............................................................................4

*In re Trados Inc. Shareholder Litig.*,
  73 A.3d 17 (Del. 2013) ........................................................................................10, 12

*In re Under Armour, Inc. S'holder Derivative Litig.*,
  2020 WL 1505575 (D. Md. Mar. 30, 2020).........................................................10, 12

*Jackson v. Warning*,
  2016 WL 7228866 (D. Md. Dec. 13, 2016)................................................................16

*Jedwab v. MGM Grand Hotels, Inc.*,
  509 A.2d 584 (Del. Ch. 1986)..............................................................................3, 9

*Jolly Roger Fund, LP v. Prime Group Realty Trs.*,
  2007 Md. Cir. Ct. LEXIS 10 (Md. Cir. Ct. Aug 16, 2007)....................................2, 9

*LC Cap. Master Fund, Ltd. v. James*,
  990 A.2d 435 (Del. Ch. 2010).......................................................................... *passim*

*Lee v. Meyers*,
  2022 WL 252960 (D. Md. Jan. 27, 2022) ..................................................................16

*MCG Cap. Corp. v. Maginn*,
  2010 WL 1782271 (Del. Ch. May 5, 2010) .................................................................7

*Microbilt Corp. v. Bail Integrity Sols., Inc.*,
  2019 WL 6310202 (D.N.J. Nov. 25, 2019) .................................................................8

*In re Nationwide Health Properties, Inc.*,
  2011 WL 10603183 (Md. Cir. Ct. May 27, 2011)......................................................13

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) ..........................................................................................9

*Oliveira v. Sugarman*,
  152 A.3d 728 (Md. 2017) ...........................................................................................10

*Poling v. CapLease, Inc.*,
  2015 WL 13309114 (Md. Cir. Ct. May 13, 2015)........................................................9

*Poling v. CapLease, Inc.*,
  2016 WL 1749803 (Md. Ct. Spec. App. May 3, 2016) .........................................10, 17

*Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*,
  728 A.2d 783 (Md. Ct. Spec. App. 1999) ....................................................................7

*Shearin v. E.F. Hutton Group, Inc.*,
  652 A.2d 578 (Del. Ch. 1994).................................................................................7, 8

*Shenker v. Laureate Educ., Inc.*,
    983 A.2d 408 (Md. 2009) ..............................................................18

*Verbal v. Giant of Md., LLC*,
    204 F. Supp. 3d 837 (D. Md. 2016) ...............................................6

*Waypoint Mgmt. Consulting, LLC v. Krone*,
    2022 WL 2528465 (D. Md. Jul. 6, 2022) .......................................7

*Werbowsky v. Collomb*,
    766 A.2d 123 (Md. 2001) .........................................................12, 18

*Zucker v. Bowl Am., Inc.*,
    2022 WL 1720151 (D. Md. May 27, 2022) ......................13, 14, 16

**Statutes**

Md. Code Ann., *Corps. & Ass'ns* § 2-405.1 ......................................9, 11, 12

**Other Authorities**

Bill Carson, Scott *Wilson*, *The Director Duties Bill*,
    Md. B.J., September/October 2016..................................................10

Fed. R. Civ. P. 12(b)(6)....................................................................6

Defendants Bruce J. Schanzer, Gregg A. Gonsalves, Abe Eisenstat, Steven G. Rogers, Sabrina Kanner, Darcy D. Morris, Richard H. Ross, and Sharon Stern (collectively, the "Directors") respectfully submit this memorandum in support of their Motion to Dismiss Counts I and II of the Consolidated Amended Class Action Complaint (the "Motion").[1] For the following reasons, the Directors respectfully submit that their Motion should be granted.

## INTRODUCTION

Plaintiffs' contract with Cedar Realty Trust, Inc. ("Cedar")—the Articles Supplementary to Cedar's Articles of Incorporation (the "Articles Supplementary" or "Art. Sup.")—defines the full scope of all rights, preferences, and duties owed to Plaintiffs as purported holders of Cedar's Series B and Series C preferred stock (the "Preferred Stockholders"). Nothing in the Articles Supplementary—that is, none of the contractually defined rights and preferences—entitled Preferred Stockholders to be cashed-out as part of Cedar's recently completed asset sale and merger. Frustrated by the terms of their contract, Plaintiffs now seek relief from the Directors for alleged breaches of contract (Count I) and fiduciary duty (Count II). But both of Plaintiffs' theories against the Directors are contrary to long-established tenets of Maryland law and the Maryland General Corporation Law, and should be dismissed.

The Directors agree that this is a case about a contract. The contract at issue, however, is an agreement between Cedar and the Preferred Stockholders. The Directors are *not* a party to the Articles Supplementary, and the Directors cannot be liable for breaching a contract to which they are not parties. Maryland has squarely considered and rejected attempts to hold a corporate officer

---

[1] Citations to the "Consolidated Complaint" or "Compl." are to Plaintiffs' Consolidated Amended Class Action Complaint (ECF No. 39). Citations to "Luz Ex." are to exhibits to the Declaration of Jennifer Burns Luz in Support of the Cedar Directors' Motion to Dismiss Counts I and II of the Consolidated Amended Class Action Complaint. Unless noted, all citations and quotations are omitted, and all emphasis is added.

or director personally liable for the contracts of the company at which they serve. *See, e.g.*, *Edenbaum v. Schwarcz-Osztreicherne*, 885 A.2d 365, 375-76 (Md. Ct. Spec. App. 2004) ("[I]n the absence of fraud, 'a corporate officer is not personally liable on a corporate contract with a third person.'" (quoting *A.B. Corp. v. Futrovsky*, 267 A.2d 130, 137 (Md. 1970))). Absent privity, the entirety of the contract claim against the Directors must be dismissed.[2]

Plaintiffs' attempt to redefine and expand the scope of fiduciary duties owed to preferred stockholders under Maryland law should likewise be denied. As this Court recognized in its ruling on Plaintiffs' motions for preliminary injunction, the law is clear:

> [W]here [] breach of fiduciary duty claims are duplicative of breach of contract claims, which is the case here, particularly with respect to the implied covenant claims, the contractual analysis should control. . . . Further, it is a well-settled principle that where a dispute arises from obligations that are expressly addressed by Contract, that dispute will be treated as a breach of contract claim. In other words, where a Contract clearly speaks to a subject, as with preferred stockholders' rights under the merger here, the Contract sets forth the bounds of the fiduciary duty.

Transcript of Ruling on Mot. for Prelim. Injunctive Relief, at 10 (June 23, 2022) ("PI Transcript"). Plaintiffs have pled no new facts that are relevant to or should alter the Court's prior analysis that the contract law analysis governs because the Directors owed a duty to the Preferred Stockholders only to the extent that the Preferred Stockholders were similarly situated with common stockholders, and that where the interests of common and Preferred Stockholders diverge, the Directors' fiduciary duty is owed to the common stockholders while ensuring that the terms of the Preferred Stockholders' contracts are not breached. *See id.; see also Jolly Roger Fund, LP v. Prime*

---

[2] The breach of contract claim should also be dismissed for the reasons articulated in the Memorandum of Defendants Cedar Realty Trust, Inc., Cedar Realty Trust Partnership, L.P., and Wheeler Real Estate Investment Trust, Inc. in Support of Their Motion to Dismiss (the "Cedar Brief"). *See* Cedar Brief at 8-19. Citations to "Cedar Ex." are to exhibits to the Cedar Brief. The Directors join Cedar's motion and adopt the arguments made in the Cedar Brief.

*Group Realty Trs.*, 2007 Md. Cir. Ct. LEXIS 10, \*26 (Md. Cir. Ct. Aug 16, 2007) (Berger, J.); *LC Cap. Master Fund, Ltd. v. James*, 990 A.2d 435, 446-49 (Del. Ch. 2010)*; Jedwab v. MGM Grand Hotels, Inc*., 509 A.2d 584, 594 (Del. Ch. 1986). Plaintiffs nevertheless seek to flip these well-established principles on their head in a repackaging of their contract claims. But the duties that Plaintiffs allege—that the Directors had a duty to ensure that Cedar activated a potential benefit provided in the Articles Supplementary and to maximize the return value for the Preferred Stockholders (at the expense of Cedar's common stockholders)—simply do not exist. Indeed, even if the Maryland statutory standard of care did give rise to such duties (it does not), the Plaintiffs have not pled sufficient facts to overcome the business judgment rule and the presumption that the Directors acted in good faith in accordance with their duties.

As set forth in detail in the Cedar Brief, the Articles Supplementary plainly and unambiguously do not entitle Plaintiffs to the relief that they now request, and this Court should not rewrite either the contract or the scope of Maryland's statutory duties to grant additional rights to the Preferred Stockholders that they did not bargain or pay for. Accordingly, the Director's Motion should be granted.

## BACKGROUND

Cedar is a real estate investment trust that was acquired by and became a wholly owned subsidiary of Wheeler Real Estate Investment Trust, Inc. ("Wheeler") on August 22, 2022. Compl. ¶¶ 2-3, 109-10. Cedar (as it did before the merger) has two classes of outstanding preferred stock, Series B and Series C, that are publicly traded on the New York Stock Exchange (the "Preferred Stock"). *Id.* ¶ 44. Plaintiffs purport to be holders of Cedar's Preferred Stock. *Id.* ¶¶ 18-23. The Directors were the members of Cedar's board of directors (the "Board") at all relevant times up until Wheeler's acquisition of Cedar, and Mr. Schanzer also served as President and CEO of Cedar

3

prior to its acquisition. *See id.* ¶¶ 28-35, 111.

Cedar's acquisition by Wheeler was the culmination of the Directors' years-long process aimed at maximizing value for Cedar's stockholders. From at least 2018, Cedar's share price had traded at a significant discount to the net asset value of its real estate portfolio. Definitive Proxy Statement (Luz Ex. 1) ("Proxy") at 28.[3] As a result, Cedar and the Board periodically explored whether the Company should engage in a strategic transaction and/or sell portions of its asset portfolio to maximize stockholder value. *Id.* To attract a wide array of potential bidders and thereby maximize the value that could be obtained, Cedar followed a "dual-track" process in which the Company and its advisors solicited both offers for the sale of the Company as a whole and offers for the sale of discrete groups of the Company's properties. Compl. ¶¶ 93-94; *see also* Proxy at 31-32. Cedar disclosed its process publicly in September 2021, and over the next five months engaged with 55 potential counterparties, 36 of whom entered into non-disclosure agreements with the Company, and ultimately received six preliminary proposals and four final proposals to acquire (i) the whole Company, (ii) certain assets of the Company, or (iii) the Company following a prior asset sale. Compl. ¶¶ 95-100; *see also* Proxy at 32-35.

In considering these competing proposals, the Board noted that the one whole-company offer would result in a lower valuation for Cedar and thus provide less value to Cedar's common stockholders than the alternative offers. Proxy at 35. Conversely, the Board observed that a "sum of the parts" series of transactions with separate parties offered greater aggregate value for the

---

[3] Although the factual allegations in the Consolidated Complaint are insufficient on their own to state a claim for relief, for the purpose of the Directors' Motion, the Court may also consider the Proxy and certain other SEC filings cited herein "because they are public documents referenced in and integral to the Complaint." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 126 (D. Md. 2021), *aff'd sub nom. In re Marriott Int'l, Inc.*, 31 F.4th 898 (4th Cir. 2022).

Company and its common stockholders, but posed greater execution risk than a single, whole-company transaction. *Id.* Ultimately, the Board approved and declared advisable and in the best interests of the Company and its common stockholders agreements for two transactions: an asset sale and a subsequent merger. Compl. ¶ 106; *see also* Proxy at 38-39. *First*, Cedar agreed to sell a portfolio of 33 grocery-anchored properties to DRA Advisors and its affiliates for a cash purchase price of $840 million (the "Grocery-Anchored Portfolio Sale"). Compl. ¶ 100.[4] *Second*, following the completion of the Grocery-Anchored Portfolio Sale, Cedar agreed to engage in an all-cash reverse merger with Wheeler that valued Cedar and its remaining assets at $291.3 million (the "Merger," and together with the Grocery-Anchored Portfolio Sale, the "Transactions").[5] *Id.* ¶¶ 100, 102. Among other things, the Board based its approval and recommendation on (1) an opinion from its financial advisor that the aggregate consideration to be received by the Company's common stockholders from the Transactions was fair, and (2) confirmation that the party that had submitted the whole-company offer had declined to increase its per share offer price and thus remained significantly below the "sum-of-the-parts" transactions that the Directors approved. *Id.* ¶¶ 105-06; *see also* Proxy at 38-41.

At a special meeting of Cedar's common stockholders on May 27, 2022, more than 99% Cedar's voting common stockholders voted to approve the Transactions. Compl. ¶ 106; *see also*

---

[4] To the extent two additional Company properties were not sold to third parties prior to the closing of the Grocery-Anchored Portfolio Sale, those properties would be acquired by DRA Advisors and its affiliates for an additional cash purchase price of $80.5 million. Compl. ¶¶ 2, 100; *see also* Proxy at 68.

[5] The structure of the Transactions—whereby (i) Wheeler would acquire Cedar following the Grocery-Anchored Portfolio Sale and (ii) the Preferred Stock would remain outstanding following the Transactions—had been initially proposed by Wheeler. Compl. ¶ 99. And the implied valuation of the Merger was based on (i) the $130 million cash consideration paid by Wheeler, and (2) the Wheeler's assumption of the $161.3 million liquidation preference associated with the Cedar's Preferred Stock. *Id.* ¶¶ 99, 135.

Proxy at 5-6; Cedar Form 8-K, dated May 31, 2022 (Luz Ex. 2). On July 7, 2022, Cedar completed

the Grocery-Anchored Portfolio Sale, and, on August 22, 2022, Cedar and Wheeler consummated

the Merger. Compl. ¶¶ 108-10. Following the Transactions, Cedar's common stockholders

received $29 per share and the Preferred Stock remains outstanding and publicly traded. *Id.* ¶¶ 110,

112.[6]

## ARGUMENT

Rule 12(b)(6) requires dismissal of a complaint if a plaintiff fails to "state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a

complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's pleading obligation "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Id.* at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

To avoid dismissal for failure to state a claim, "[l]egal conclusions couched as factual allegations

are insufficient, as are conclusory factual allegations devoid of any reference to actual events."

*Verbal v. Giant of Md., LLC*, 204 F. Supp. 3d 837, 844 (D. Md. 2016); *see also Iqbal*, 556 U.S. at

678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").

## I.    COUNT I SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE THE DIRECTORS ARE NOT PARTIES TO THE ARTICLES SUPPLEMENTARY.

Plaintiffs' breach of contract claims against the Directors must be dismissed for the simple

---

[6] For additional background regarding the Transactions and the Articles Supplementary that govern Cedar's relationship with its Preferred Stockholders, *see* Cedar Brief at 3-7.

reason that the Directors are not parties to the Articles Supplementary.[7] "[C]orporate officers and directors are not parties to a contract simply because the corporation they serve is a party to the contract." *MCG Cap. Corp. v. Maginn*, 2010 WL 1782271, at *11 (Del. Ch. May 5, 2010). There is no allegation that the Directors are parties to the Articles Supplementary,[8] rather, as Plaintiffs admit, "[u]nder Maryland law, the Articles Supplementary are a contract **between Cedar and its Preferred Stockholders**." Compl. ¶ 152. In Maryland, "a person cannot be held liable under a contract to which he was not a party." *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 728 A.2d 783, 794 (Md. Ct. Spec. App. 1999); *see also Waypoint Mgmt. Consulting, LLC v. Krone*, 2022 WL 2528465, at *29 (D. Md. Jul. 6, 2022) (same).

Moreover, there is nothing inherent in their role as directors that would make the Directors personally liable for a breach of the Articles Supplementary by Cedar. Courts have rejected precisely this argument, absent fraud or a clearly expressed intent to assume contractual obligations, neither of which is pled here. *See Edenbaum*, 885 A.2d at 375-76 ; *Buck*, 667 A.2d at 653 ("The rule is clear, however, that an officer is not personally liable on an agreement when there is no evidence in the record that the officer intended to assume the obligation."); *see also Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994) ("[E]mployees or directors of a contracting corporation cannot be held personally liable for inducing a breach of contract by

---

[7] Count I against the Directors should also be dismissed for failure to state a claim that the Articles were breached for the reasons articulated in the Cedar Brief, which the Directors fully adopt and incorporate herein.

[8] Plaintiffs do not allege that the Directors signed the Articles Supplementary. The only Director who did so was Mr. Schanzer, who signed the Articles Supplementary in his official capacity as President of Cedar. This is not sufficient for personal liability because a corporate officer signing a contract on behalf of the corporation cannot be held personally liable. *Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 653 (Md. 1995); *see also Ace Development Co. v. Harrison*, 76 A.2d 566, 570 (Md. 1950) ("[W]hen an official or agent signs a contract for his corporation it is simply a corporate act. It is not the personal act of the individual, and he is not personally liable for the corporate contract unless the matter is tainted by fraud . . . .").

their corporations when they act within their role."). And, to the extent that Plaintiffs' breach of contract claims against the Directors are premised on alleged breaches of the implied duty of good faith and fair dealing, this theory fares no better. *See, e.g.*, *Herman v. Green,* 234 F.3d 1262, at *2 (2d Cir. 2000) (unpublished table decision) ("[W]e have found[] no support for the proposition that a contract's covenant of good faith and fair dealing can bind someone who was not a party to that contract."); *Microbilt Corp. v. Bail Integrity Sols., Inc.*, 2019 WL 6310202, at *6 (D.N.J. Nov. 25, 2019) ("[N]onparties to a contract cannot be held liable for a breach of a contractual duty of good faith and fair dealing.").

More fundamentally, the Articles Supplementary do not provide the Preferred Stockholders with any rights *vis-à-vis* the Directors. Plaintiffs allege that the Articles Supplementary did not permit Cedar to close the Transactions without paying a liquidation preference or permitting the Preferred Stockholders to exercise their conversion rights. Even if the Plaintiffs' reading of the Articles Supplementary were correct (it is not), the Articles Supplementary do not provide that individual Board members will pay the liquidation preference or convert shares of Preferred Stock into common stock. At most, the Board authorized Cedar to engage in these purported breaches, but, as stated above, this is a patently insufficient basis to impose contractual liability on board members. *See Shearin*, 652 A.2d at 590. Accordingly, the Consolidated Complaint fails to state a claim against the Directors for breach of contract and, therefore, Count I should be dismissed.

## II.    COUNT II SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

### A.    Preferred Stockholders Are Not Owed Anything Beyond Their Contractual Rights, Which Have Not Been Violated.

Plaintiffs have failed to articulate any duty owed to the Preferred Stockholders separate from the rights provided under the Articles Supplementary, and Count II's claims against the

Directors must be dismissed. Under Maryland law, the sole duties owed by a board of director to the corporation or its stockholders are defined by statute. *See* Md. Code Ann., *Corps. & Ass'ns* § 2-405.1(c). And, as this Court has previously recognized, "it is a well-settled principle that where a dispute arises from obligations that are expressly addressed by Contract, that dispute will be treated as a breach of contract claim." PI Transcript at 10; *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) (same); *see also Poling v. CapLease, Inc.*, 2015 WL 13309114, at *9 (Md. Cir. Ct. May 13, 2015) (dismissing fiduciary duty claim because "the claimed breach of fiduciary duty relies upon the allegations that defendants' conduct contravenes the Articles Supplementary"), *aff'd*, 2016 WL 1749803 (Md. Ct. Spec. App. May 3, 2016). "When, by contract, the rights of the preferred in a particular transactional context are articulated, it is those rights that the board must honor. To the extent that the board does so, it need not go further and extend some unspecified fiduciary beneficence on the preferred at the expense of the common." *LC Cap. Master Fund*, 990 A.2d at 448-49. That is because directors owe fiduciary duties to preferred stockholders only "where [] the right asserted is not to a preference as against the common stock but rather a right shared equally with the common." *Jedwab*, 509 A.2d at 594; *see also Jolly Roger Fund*, 2007 Md. Cir. Ct. LEXIS 10, at *26 ("[P]referred shareholders are entitled to unique rights as compared to common shareholders, and preferred shareholders rights are expressly limited to their preferred shareholder agreement."); *Frederick Hsu Living Tr. v. ODN Holding Corp*., 2017 WL 1437308, at *21 (Del. Ch. Apr. 14, 2017), *as corrected* (Apr. 24, 2017) ("Preferred stockholders are owed fiduciary duties only when they do not invoke their special contractual rights and rely on a right shared equally with the common stock."). Here, Plaintiffs seek to enforce rights that arise solely under the Articles Supplementary and, therefore, the standard of conduct articulated in Section 2-

405.1(c) of the Maryland General Corporation Law is not implicated and Directors do not owe Plaintiffs any corresponding legal duties.[9]

To the extent that the Consolidated Complaint alleges that the Directors breached the statutory standard of conduct (*i.e.*, their fiduciary duties) by causing Cedar to enter into transactions that were "deliberately structure[ed]" so as to "depriv[e]" Preferred Stockholders "of the fruits of the Articles Supplementary," Compl. ¶ 174,[10] this is nothing more than a repackaging of Plaintiffs' contract arguments. Put differently, Plaintiffs claim that it was a breach for the Directors to structure the Transactions without specifically triggering certain rights provided by the Articles Supplementary. But "[a] board does not owe fiduciary duties to preferred stockholders when considering whether or not to take corporate action that might trigger or circumvent the preferred stockholders' contractual rights." *In re Trados Inc. Shareholder Litig.*, 73 A.3d 17, 39 (Del. 2013) ("*Trados II*"). "[W]here a Contract clearly speaks to a subject, as with preferred stockholders' rights under the merger here, the Contract sets forth the bounds of the fiduciary duty." PI Transcript at 10; *see also Poling v. CapLease, Inc.*, 2016 WL 1749803, at *3 (Md. Ct. Spec. App. May 3, 2016) ("The difference between common stock and preferred stock lies in

---

[9] Although several of the cases cited were decided by the Delaware courts, Maryland courts "frequently look[] to Delaware courts for guidance on issues of corporate law." *Oliveira v. Sugarman*, 152 A.3d 728, 736 n.4 (Md. 2017); *see also In re Under Armour, Inc. S'holder Derivative Litig.*, 2020 WL 1505575, at *5 n.9 (D. Md. Mar. 30, 2020) (Russell, J.) (same).

[10] Unlike Delaware law, which relies upon common law fiduciary duties to regulate director conduct, Section 2-405.1 of the Maryland General Corporation Law is the sole source of the legal duties that a director owes to the corporation or its stockholders. In 1976 "the [Maryland] General Assembly adopted Section 35 of the Model Business Corporation Act (now, Section 8.30) and enacted Section 2-405.1 of the MGCL" and by "adopting the standard of conduct articulated in the Model Business Corporation Act, the General Assembly codified director duties [in a statutory standard of conduct] replacing the common law fiduciary duties that had historically governed director conduct." Bill Carson, Scott Wilson, *The Director Duties Bill: Amendments to Section 2-405.1 of the Maryland General Corporation Law*, Md. B.J., September/October 2016, at 40, 41. The Maryland General Assembly reaffirmed this position in 2016. *See id.*

preferred stock's preferential rights, which are defined by contract . . . ."); *Blue Chip Cap. Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 834 (Del. Ch. 2006) (dismissing fiduciary duty claim because plaintiff's "claimed right as a preferred stockholder to a larger distribution of the proceeds arises from contractual rights and obligations under the certificate of incorporation"). For these reasons, this Court previously found that Plaintiffs were not able to show a likelihood of success on the merits on their fiduciary duty claim for the purposes of obtaining injunctive relief. PI Transcript at 10. The Consolidated Complaint does not include any new allegations that should alter the Court's prior analysis.

Plaintiffs' second theory of breach of fiduciary duty fails for the same reasons. Plaintiffs' claim that the Directors breached their duties because they not did not "maximize [the] value" of the payout *to* the Preferred Stockholders. Compl. ¶ 173. No such duty exists, and, if it did exist under these circumstances, the duty would be to maximize the overall price obtained for the Company.[11] If anything, the Board was obligated to prefer the interests of the common stockholders in terms of how to distribute the proceeds of the Transactions. *Equity-Linked Invs., L.P. v. Adams*, 705 A.2d 1040, 1042 (Del. Ch. 1997) (finding that board had a duty "to prefer the interests of common stock—as the good faith judgment of the board sees them to be—to the interests created by the special rights, preferences, etc., of preferred stock"). Because the rights of the Preferred Stockholders are addressed by contract, the Board need not—indeed ***cannot***—go beyond the contract setting forth the rights of Preferred Stockholders "and extend some unspecified

---

[11] Plaintiffs do not allege that the Directors did not maximize the value of Cedar, nor could they, as the overall value represented a 70% premium to the unaffected stock price. Proxy at 39. Regardless, no such duty can be found in Section 2-405.1, which is the "sole source of duties of a director to the corporation or the stockholders of the corporation, whether or not a decision has been made to enter into an acquisition or a potential acquisition of control of the corporation." Md. Code Ann., *Corps. & Ass'ns* § 2-405.1(i).

fiduciary beneficence on the preferred *at the expense of the common*." *LC Cap. Master Fund*, 990 A.2d at 449 (because "[t]he special protections offered to the preferred are contractual in nature," the board's duty " is to be exercised[] to prefer the interests of common stock . . . where there is a conflict"); *Trados*, 73 A.3d at 42 ("[I]n circumstances where the interests of the common stockholders diverge from those of the preferred stockholders, it is possible that a director could breach her duty by improperly favoring the interests of the preferred stockholders over those of the common stockholders.").

The Director's duties under Section 2-405.1 simply do not extend nearly as far as Plaintiffs allege. The Court should decline Plaintiffs' invitation to rewrite and expand Maryland's statutory duty to preferred stockholders and dismiss Count II.

### B.  Even If The Directors Owed The Preferred Stockholders Non-Contractual Duties, Their Conduct Would Be Protected By Maryland's Statutory Business Judgment Rule.

Even if the Directors did owe the Preferred Stockholders unspecified, additional fiduciary duties under Maryland law (they did not), Plaintiffs still have failed to state a claim for breach of fiduciary duty. Namely, the Consolidated Complaint does not plead facts sufficient to rebut the presumption under Maryland law that the Directors "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Werbowsky v. Collomb*, 766 A.2d 123, 138 (Md. 2001); *see also* Md. Code Ann., *Corps. & Ass'ns* § 2-405.1 (g) ("An act of a director of a corporation is presumed [to satisfy the standards of care under § 2-405.1(c)]."). Also known as the "business judgment rule," this codified presumption "protects corporate directors from liability when the majority of directors act prudently and in good faith." *In re Under Armour, Inc. S'holder Derivative Litig.*, 2020 WL 1505575, at *4. "Unless the business judgment rule is rebutted, 'the court merely looks to see whether the business decision made was rational in the sense of being one logical approach to advancing the corporation's

12

objectives.'" *Zucker v. Bowl Am., Inc.*, 2022 WL 1720151, at \*8 (D. Md. May 27, 2022) (quoting *In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 598 (Del. Ch. 2010)). As a result, Maryland courts applying the business judgment rule "will not ordinarily disturb a board's informed course of conduct." *Id.* at \*7. To avoid the application of the business judgment rule, and thus dismissal of their fiduciary duty claim, Plaintiffs must "introduc[e] evidence of director self-interest or self-dealing, or that the directors lacked good faith or failed to exercise due care." *In re Nationwide Health Properties, Inc.*, 2011 WL 10603183, at \*13 (Md. Cir. Ct. May 27, 2011). The Consolidated Complaint completely fails to meet this exacting test.

*First*, Plaintiffs do not allege anywhere that the Directors breached Section 2-405.1(c) or an implied duty of loyalty when they approved and recommended the transactions. Nor could they do so. "To rebut the presumption of loyalty, the Complaint must contain well-pleaded facts that, if proven true, would demonstrate that a majority of the Board, stood to receive 'personal financial benefit from [the transaction] *in the sense of self-dealing* . . . .'" *In re Nationwide*, 2011 WL 10603183, at \*14 (quoting *Werbowsky*, 766 A.2d at 123). Stated differently, "directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Boland v. Boland*, 31 A.3d 529, 549 (Md. 2011). The only financial benefits the Directors received were cash payments for their common stock (on the same term as every common shareholder) and the accelerated vesting of their restricted stock units and, in the case of Mr. Schanzer, certain change-of-control benefits pursuant to his pre-existing employment agreement. Compl. ¶¶ 28-35. As a matter of law, these financial benefits do not constitute a conflict that would give rise to a duty of loyalty claim. *See Zucker*, 2022 WL 1720151, at \*10 ("[T]he possibility of receiving change-in-control benefits pursuant to pre-existing employment

13

agreements does not create a disqualifying interest as a matter of law." (quoting *Huff Energy Fund, L.P. v. Gershen*, 2016 WL 5462958, at *11 (Del. Ch. Sept. 29, 2016))); *see also Globis Partners, L.P. v. Plumtree Software, Inc.*, 2007 WL 4292024, at *8 (Del. Ch. Nov. 30, 2007) ("The accelerated vesting of options does not create a conflict of interest because the interests of the shareholders and directors are aligned in obtaining the highest price.").

Recognizing that a duty of loyalty type claim would be dead on arrival, Plaintiffs instead allege that Directors breached some unspecified fiduciary duty owed to Preferred Stockholders by "maximiz[ing] their own payout from the Transactions at the expense of Preferred Stockholders." Compl. ¶ 162. Although this is just another way of saying that the directors maximized the return for the common stockholders and thus not a cognizable breach of fiduciary duty theory for the reasons discussed *supra*, even if it were, the Consolidated Complaint does not contain sufficient factual allegations to support such a fiduciary duty claim. Plaintiffs' argument appears to be that the Directors were conflicted or self-interested in making their decision to recommend and approve the Transactions. But in order to state a claim for relief based on this supposed conflict, the Consolidated Complaint would have to allege—at a minimum—that the benefits received by the Directors at the expense of the Preferred Stockholders were "of a sufficiently material importance, in the context of [each] director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties." *Zucker*, 2022 WL 1720151, at *10 (quoting *In re Nationwide*, 2011 WL 10603183, at *14). Further, Plaintiffs would also have to allege that the majority of the Directors were affected by such a conflict. *See id.* Yet the Consolidated Complaint contains no such factual allegations. Plaintiffs merely allege the aggregate amounts received by the Directors for their common stock and/or restricted stock units in connection with the Transactions; they do not allege what portion of the amounts received by the Directors were

14

received "at the expense of the Preferred Stockholders," or why any additional, ill-begotten amounts were material to a majority of the Directors. *See* Compl. ¶¶ 28-36.[12]

*Second*, the Consolidated Complaint does not even attempt to allege that the Directors failed to act prudently. Plaintiffs have not alleged anywhere that the Directors failed to exercise due care in approving and recommending either the Grocery-Anchored Portfolio Sale or the Merger. To the contrary, the Consolidated Complaint admits that the Grocery-Anchored Portfolio Sale and the Merger were arms-length transactions negotiated over the course of many months as part of a robust, publicly announced strategic review process conducted by Cedar with the assistance of financial and other advisors. Compl. ¶¶ 99-100.

*Finally*, Plaintiffs have failed to rebut Maryland's codified presumption that the Directors acted in good faith. As an initial matter, Plaintiffs do not identify which specific conduct by the Directors amounts to a breach of their fiduciary duty of good faith. Plaintiff's allegations regarding the Directors' supposed bad faith are too conclusory, non-specific, and scattershot to satisfy their burden of rebutting the presumption. Plaintiffs simply point generally to the same conduct that forms the basis for their claim for breach of the implied covenant of good faith and fair dealing under the Articles Supplementary. *See* Compl. ¶¶ 172,174. This is not sufficient. In particular, many of the "facts" that Plaintiffs point to as evidence of the Directors' supposed bad faith boil down to an allegation that Cedar would not have sufficient equity to cover the Preferred

---

[12] More specifically, Plaintiffs allege that the Transactions generated a cumulative $46 million for the eight Directors based on their holdings of Cedar's common stock and/or restricted stock units. Compl. ¶ 36. But six of the eight Directors, as a group, allegedly held just $3 million in Cedar common stock and/or restricted stock units. Of those six, one Director is alleged to have received less than $75,000 in consideration following the Transactions, *id.* ¶ 33, one Director is alleged to have received less than $200,000, *id.* ¶ 34, and three Directors are alleged to have received around $500,000, *id.* ¶¶ 29, 31, 35. Plaintiff nowhere alleges that these amounts are material to any of the Directors, never mind a majority of the Directors.

Stockholders' $161.3 million liquidation preference following the Transactions. Compl. ¶¶ 160-62. But this does not amount to a breach of either the contractual or fiduciary duty of good faith because the Articles Supplementary expressly contemplate and allow for this. More specifically, the Articles Supplementary provide that the Board, when determining whether a dividend is allowed by Maryland law, need not include "amounts that would be needed, if the Corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of the holders of Series C Preferred Stock." Art. Sup. (Cedar Ex. 1) § 4(f); *see also* Cedar Brief at 6, 17.[13]

Rather, "to state a claim based on the duty of good faith, a plaintiff must allege conduct motivated by an intent to do harm, or actions amounting to an 'intentional dereliction of duty, a conscious disregard for one's responsibilities.'" *Zucker*, 2022 WL 1720151, at *10 (quoting *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 62 (Del. 2006)). Although Plaintiffs baldly assert in multiple places that the Directors intended to injure the Preferred Stockholders by approving and recommending the Transactions, *see* Compl. ¶¶ 159, 174, Plaintiffs have alleged no facts to support such an inference.[14] At most, Plaintiffs have alleged that Directors knew or should have known that the trading price of the Cedar's Preferred Stock would decline after the Transactions were announced, *see* Compl. ¶ 159, but that is not the same thing as the Directors having **an intent to injure** the Preferred Stockholders, nor is it sufficient to state a claim for breach of the fiduciary

---

[13] Not only are Plaintiffs' allegations insufficient to establish any kind of bad faith conduct, *see* Cedar Brief at 15-19, but Plaintiffs' allegations are an example of impermissible "shotgun pleading," *See Lee v. Meyers*, 2022 WL 252960, at *11 (D. Md. Jan. 27, 2022) ("A complaint . . . in which it is virtually impossible to know which allegations of fact are intended to support which claims for relief constitutes a 'shotgun pleading.'"); *Jackson v. Warning*, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) (same). To be clear, however, even if the Consolidated Complaint was more precise, it would still fail to state a claim.

[14] Plaintiffs also do not claim anywhere that the Directors intentionally or consciously disregarded their duties in connection with approving or recommending the Transactions.

duty of good faith, *see Poling*, 2016 WL 1749803, at *7 (finding allegation that transaction was "unfair" because preferred stock price dropped following merger announcement did not support a claim for breach of director's fiduciary duty).[15] Further, as Plaintiffs concede, Compl. ¶ 99, Wheeler proposed the structure of the Merger and leaving the preferred stockholders outstanding; this proposal was not some nefarious plot by the Directors to harm the Preferred Stockholders.

The remaining "facts" in the Consolidated Complaint that are supposedly evidence of the Directors' bad faith are of no more help to Plaintiffs. *See* Compl. ¶¶ 159-70. And only a handful of these so-called "facts" concern specific conduct by the Directors. The allegations that the Directors approved and recommended the Transactions to maximize their own financial gain at the expense of the Preferred Stockholders, *see* Compl. ¶¶ 162-64, do not state a claim for breach of the duty of the good faith for the same reasons they do not state a claim for breach of the duty of loyalty or any other fiduciary duty. Moreover, as long as Cedar complied with its contractual obligations to the Preferred Stockholders under the Articles Supplementary—which it did—the Directors cannot have breached their duty of good faith by approving and recommending transactions that maximized value for the common stockholders. *See LC Cap. Master Fund*, 990 A.2d at 449 (because "[t]he special protections offered to the preferred are contractual in nature," the board's duty "where discretionary judgment is to be exercised [is] to prefer the interests of common stock . . . where there is a conflict").

Meanwhile, the allegation that Mr. Schanzer somehow acted in bad faith when he stated in September 2021 that the "Board is committed to maximizing value for all our shareholders" is nonsense. Compl. ¶ 165. Again, as Plaintiffs concede, Cedar *subsequently* undertook a thorough,

---

[15] Plaintiffs' other allegations concerning the Directors' supposed "intent to injure" the Preferred Stockholders merely repackage the allegations from their breach of contract claims and do not identify any specific conduct by the Directors. *See* Compl. ¶¶ 161-62, 167-68.

months-long strategic review process that ultimately culminated in the Board approving and recommending the Transactions. Compl. ¶¶ 99-100. The fact that Plaintiffs now contend that the Transactions failed to maximize value for the Preferred Stockholder does not render Mr. Schanzer's earlier statement inaccurate nor does it establish that Cedar or the Directors acted in bad faith.[16] Finally, the allegation that the Directors "never appointed an independent representative to advocate for the Preferred Stockholders in connection with its consideration of various transactions" is not evidence of bad faith either. Compl. ¶ 166. Although Plaintiffs may wish it were otherwise, there is simply no requirement under Maryland law that a board of directors must appoint an independent representative to advocate for preferred stockholders in these circumstances. Prior courts have considered exactly this argument and rejected imposing a requirement that boards designate a specific designee or special committee solely for preferred shareholders. *See, e.g.*, *LC Cap. Master Fund*, 990 A.2d at 451 (such a requirement would "in essence, give [the preferred stockholders] leverage that they did not fairly extract in the contractual bargain"). Indeed, such a requirement would be inconsistent with a board of directors' obligation to maximize value for the common stockholders. *See Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 419 (Md. 2009).

Absent any specific, non-conclusory allegations that the Directors were disloyal, failed to act prudently, or acted in bad faith, the Plaintiffs have not adequately rebutted the presumption that the Directors acted with "the honest belief that the action taken was in the best interests of the company." *Werbowsky*, 766 A.2d at 138. Accordingly, Plaintiffs have failed to rebut the

---

[16] In addition to there being no allegations to suggest that Cedar and the Board did not intend to maximize value for shareholders, Mr. Schanzer's statement is an ordinary forward-looking corporate statement made alongside statements explaining the relevant risks facing Cedar, making it highly unlikely that any investor would be misled by Mr. Schanzer's statement.

presumption under Maryland law that the Directors acted in good faith by approving and recommending the Transaction, and the Plaintiffs' breach of fiduciary duty claim should be dismissed.

## III.    THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

This is the fourth complaint filed on behalf of the purported class of Preferred Stockholders. Plaintiffs have now had multiple opportunities to plead viable claims against the Directors, including with the benefit of the Court's guidance from its ruling denying their motions for preliminary injunctive relief and after certain discovery during the preliminary injunction phase of the case, yet they have failed to do so. Accordingly, Counts I and II of the Consolidated Complaint should be dismissed with prejudice and the Plaintiffs should not be allowed a further opportunity to amend their complaint. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 2021 WL 2401641, at *18 (D. Md. June 11, 2021) (denying leave to amend where plaintiff had already filed multiple complaints and further amendment would be futile); *see also Daniyan v. Viridian Energy LLC*, 2015 WL 4031752, at *4 (D. Md. June 30, 2015) (Russell, J.) (dismissing complaint for failure to state a claim and denying motion for leave to amend because amendment would be futile).

## CONCLUSION

For the foregoing reasons, the Court should grant the Directors' Motion to Dismiss Counts I and II of the Consolidated Amended Class Action Complaint with prejudice.

Dated: October 7, 2022                    By:    */s/ William M. Krulak, Jr.*

                                           William M. Krulak, Jr. (Fed. Bar No. 26452)
                                         Megan J. McGinnis (Fed. Bar No. 12810)
                                         MILES & STOCKBRIDGE P.C.
                                         100 Light Street
                                         Baltimore, Maryland 21202
                                         T/F: 410-385-3727
                                         wkrulak@milesstockbridge.com
                                         mmcginnis@milesstockbridge.com

                                          Joshua R. Chazen (Fed. Bar No. 06837)
                                         MILES & STOCKBRIDGE P.C.
                                         11 North Washington Street
                                         Rockville, Maryland 20850
                                         T/F: 202-465-8388
                                         jchazen@milesstockbridge.com

                                          Douglas H. Flaum (admitted *pro hac vice*)
                                         GOODWIN PROCTER LLP
                                         The New York Times Building
                                         620 Eighth Avenue
                                         New York, NY 10018-1405
                                         Telephone: (212) 813-8800
                                         Facsimile: (212) 355-3333
                                         dflaum@goodwinlaw.com

                                          Jennifer Burns Luz (admitted *pro hac vice*)
                                         GOODWIN PROCTER LLP
                                         100 Northern Avenue
                                         Boston, MA 02210
                                         Telephone: (617) 570-1000
                                         Facsimile: (617) 523-1231
                                         jluz@goodwinlaw.com

                                         *Counsel for Defendants Bruce J. Schanzer, Gregg A. Gonsalves, Abe Eisenstat, Steven G. Rogers, Sabrina Kanner, Darcy D. Morris, Richard H. Ross, and Sharon Stern*