**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**


---------------------------------------------------------------------x
IN RE CEDAR REALTY TRUST, INC.       :     **CONSOLIDATED**
PREFERRED SHAREHOLDER LITIGATION   :
          :     Case No. 8:22-cv-1103-GLR
          :
          :
---------------------------------------------------------------------x


**PLAINTIFFS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF MOTION TO CERTIFY A QUESTION**
**OF LAW TO THE SUPREME COURT OF MARYLAND**

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.      Certification of the Proposed Question is Appropriate Because the Precise Scope
of the Good Faith Duty Under Maryland Law Has Long Been Unsettled .........................2

II.     The Proposed Question Satisfies Both Prongs of the Two-Part Test for
Certification ...............................................................................................................4

      A.     Under the Lenient Plausibility Standard Applicable on a Motion to Dismiss,
the Maryland Supreme Court's Answer to the Proposed Question Will
Determine the Outcome of Cedar's Motion to Dismiss the Claim for Breach
of the Good Faith Duty ...........................................................................................4

      B.     The Precise Scope of the Good Faith Duty Has Not Been Consistently
Formulated by Maryland State and Federal Courts .................................................9

CONCLUSION.................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Antonio v. SSA Sec., Inc.,* 749 F.3d 227 (4th Cir. 2014) .................................................. 3

*Arrington v. Colleen, Inc.,* 2001 WL 34117735 (D. Md. March 29, 2001) .................................. 3

*Attkisson v. Bridges,* 2021 WL 6123267 (D. Md. Dec. 27, 2021) .................................. 8

*Automatic Laundry Serv., Inc. v. Demas,* 141 A.2d 497 (Md. 1958) .......................... 12

*Blondell v. Littlepage,* 991 A.2d 80 (Md. 2010) ................................................ 9, 11

*Bourgeois v. Live Nation Ent., Inc.,* 2012 WL 2234363 (D. Md. June 14, 2012) ........................ 3

*Clancy v. King,* 954 A.2d 1092 (Md. 2008) ................................................ 10

*Covey v. Assessor of Ohio Cnty.,* 777 F.3d 186 (4th Cir. 2015) ................................................ 8

*CR-RSC Tower I, LLC v. RSC Tower I, LLC,* 56 A.3d 170 (Md. 2012) ................................. 9, 10

*Danzi v. Am. Honda Motor Co.,* 2019 WL 13244010 (D. Md. June 10, 2019) ............................ 3

*Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003) ............................................ 9

*E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175 (4th Cir. 2000) .............. 4, 10, 11

*Flournoy v. Rushmore Loan Management Services, LLC,* 2020 WL 1285504 (D. Md. March 17, 2020) ......................................................... 3

*Goldstein v. Denner,* 2022 WL 1671006 (Del. Ch. May 26, 2022) ................................ 7

*Layani v. Ouazana,* 2022 WL 11949038 (D. Md. Oct. 20, 2022) .............................. 10

*Lehman Bros. v. Schein,* 416 U.S. 386 (1974) ................................................ 1

*Polek v. J.P. Morgan Chase Bank, N.A.,* 36 A.3d 399 (Md. 2012) ......................... 2, 12

*Questar Builders, Inc. v. CB Flooring, LLC,* 978 A.2d 651 (Md. 2009) ..................... 11

*Robertson v. Sea Pines Real Estate Cos.,* 679 F.3d 278 (4th Cir. 2012) ...................... 8

*Roe v. Doe,* 28 F.3d 404 (4th Cir. 1994)) ................................................ 3

*Rohan v. Networks Presentation LLC,* 192 F. Supp. 2d 434 (D. Md. 2002) .................. 8

*Sartin v. Macik,* 535 F.3d 284 (4th Cir. 2008) ................................................ 1

*SD3, LLC v. Black & Decker (U.S.) Inc.,* 801 F.3d 412 (4th Cir. 2015) ...................... 9

*Tapestry, Inc. v. Factory Mut. Ins. Co.,* 599 F. Supp. 3d 331 (D. Md. 2022) ................. 1, 4

*Tate v. Am. Gen. Life Ins. Co.,* 2022 WL 4225485 (D. Md. Sept. 13, 2022) ............... 14

*Wal-Mart Real Est. Bus. Tr. v. Garrison Realty Invs., LLC,* 2022 WL 3647781 (D. Md. Aug. 24, 2022) ......................................................... 5, 8, 10

*WSC/2005 LLC v. Trio Ventures Assocs.,* 190 A.3d 255, 266 (2018) .......................... 10

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion ("Motion") to certify a question of law to the Supreme Court of Maryland (Dkt. No. 60), and in response to Defendants' brief opposing the Motion (Dkt. No. 73) ("DB").[1]

## PRELIMINARY STATEMENT

Defendants mischaracterize the Motion as seeking "extraordinary relief," but the Supreme Court and the Fourth Circuit have long encouraged certifying questions to a state's highest court when the two-part test for certification is met. *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (certification "save[s] time, energy, and resources and helps build a cooperative judicial federalism."); *Sartin v. Macik*, 535 F.3d 284, 291 n.6 (4th Cir. 2008) (certification "greatly facilitate[s] the resolution of unresolved questions of state law . . . by ensuring the correct legal outcome, aiding in judicial economy, and manifesting proper respect for federalism."). As this Court has itself recognized, the purpose of the Maryland Uniform Certification of Questions of Law Act is to "promote the ***widest possible use*** of the certification process in order to promote judicial economy and the proper application of [Maryland]'s law." *Tapestry, Inc. v. Factory Mut. Ins. Co.*, 599 F. Supp. 3d 331, 333 (D. Md. 2022) (Russell, J.) (emphasis in original), *certified question answered*, 2022 WL 17685594 (Md. Dec. 15, 2022).

The two-part test is easily satisfied here. Defendants contend that resolution of the Proposed Question may not be outcome determinative, but it is clear that if the Maryland Supreme Court adopts the Broad View of the Good Faith Duty, Cedar's motion to dismiss the Good Faith

---

[1] All references to ("¶__)" are to paragraphs in the Consolidated Amended Class Action Complaint. (Dkt. No. 39) ("Complaint"). Any capitalized term not defined herein has the meaning given to it in the Complaint or Plaintiffs' Opening Brief (Dkt. No. 60-1). In all quotations from documents or cases, any emphasis is added, and internal quotation marks and citations are omitted, unless otherwise noted.

Duty claim must be denied under the lenient "plausibility" standard applicable at the pleading stage. (Point II.A below). As such, the Maryland Supreme Court's answer to the Proposed Question will be outcome determinative. Further, while Defendants mistakenly contend otherwise, Maryland law concerning the scope of the Good Faith Duty is unsettled. (Point II.B below). Indeed, Defendants helpfully reinforce this point by citing a Maryland Supreme Court decision that challenges the Narrow View. *See Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (Narrow View "***may be under-inclusive*** of the array of the potential applications of the doctrine of the implied covenant of good faith and fair dealing.").[2]

## ARGUMENT

### I.      Certification of the Proposed Question is Appropriate Because the Precise Scope of the Good Faith Duty Under Maryland Law Has Long Been Unsettled

Defendants concede that certification is appropriate where "there are truly unsettled decisions of state law." (Defendants Brief ("DB") at 2). Here, as detailed in Plaintiffs' opening brief (Dkt. No. 60-1) ("OB"), the precise scope of the Good Faith Duty under Maryland law has long been unsettled with three Maryland Supreme Court decisions (as well as several federal district court opinions) adopting the Broad View, and at least one Maryland Supreme Court decision (and several federal district court opinions) articulating the Narrow View. (OB at 6-8).[3]

Under similar circumstances, the Fourth Circuit has declined to choose between

---

[2] To be clear, Plaintiffs maintain that the Broad View is supported by the weight of authority and represents the correct standard, and that the Narrow View is based on a misreading of precedent. (*See* Dkt. No. 46 at 3-6 and Point II.B below). As such, if the Court declines to certify the Proposed Question to the Maryland Supreme Court, it should adopt the Broad View.

[3] As discussed in Point II.B below, Defendants have identified a second Maryland Supreme Court decision adopting the Narrow View, and a fourth Maryland Supreme Court decision supporting the Broad View. These additional decisions only reinforce the need to seek clarity from the Maryland Supreme Court concerning the precise scope of the Good Faith Duty.

"conflicting indicators" concerning the meaning of a Maryland statute, and instead sought "the Court of Appeals of Maryland's guidance." *See Antonio v. SSA Sec., Inc.,* 749 F.3d 227, 237 (4th Cir. 2014); *see also Bourgeois v. Live Nation Ent., Inc*., 2012 WL 2234363, at *1 (D. Md. June 14, 2012) (certifying question where "the viability in Maryland of a claim for 'money had and received' (Count I), based on the violation of a local ordinance, *is uncertain in light of present Maryland appellate case law*."). Likewise, the Court here should ask the Maryland Supreme Court to reconcile its inconsistent precedent and provide binding guidance to the lower courts concerning the precise scope of the Good Faith Duty under Maryland law.

None of Defendants' authorities addressing certification support denial of the Motion. In *Flournoy v. Rushmore Loan Management Services, LLC*, 2020 WL 1285504 (D. Md. March 17, 2020), the Maryland Supreme Court had not yet addressed the point at issue, but the relevant statute was "clear and unambiguous," and other courts presented with the interpretative question had *all* reached the same conclusion. *Id.* at *10. Similarly, in *Arrington v. Colleen, Inc*., 2001 WL 34117735 (D. Md. March 29, 2001), there was "[s]ufficient state case law and interpretive guidance" to "guide the court in the matters of state law statutory interpretation that is necessary to address all legal and factual issues raised in this case." *Id.* at *6. And in *Roe v. Doe*, the Fourth Circuit found that "South Carolina's law on this issue is *quite plain*" (28 F.3d 404, 408 (4th Cir. 1994)), while in *Danzi v. Am. Honda Motor Co*., the Court concluded that "Maryland law on strict products liability is *clear*." 2019 WL 13244010, at *3 (D. Md. June 10, 2019) (Russell, J.).

Here, in contrast, the scope of the Good Faith Duty has been formulated inconsistently by the Maryland Supreme Court, as well as by numerous decisions in this District. (OB at 6-8 and Point II.B below). As such, there is a demonstrable *lack* of clarity concerning the scope of the Good Faith Duty under Maryland law. In such circumstances, the Court should ask the Maryland

Supreme Court to clarify the precise scope of the Good Faith Duty.[4]

## II. The Proposed Question Satisfies Both Prongs of the Two-Part Test for Certification

### A. Under the Lenient Plausibility Standard Applicable on a Motion to Dismiss, the Maryland Supreme Court's Answer to the Proposed Question Will Determine the Outcome of Cedar's Motion to Dismiss the Claim for Breach of the Good Faith Duty

Defendants contend that the Maryland Supreme Court's answer to the Proposed Question is not likely to be outcome determinative "because no matter the contours of the implied covenant, plaintiffs' contractual claims fail because they have been afforded all of their contractual entitlements." (DB at 4). Defendants further argue that, as things currently stand, Plaintiffs and other Preferred Stockholders "have not been deprived of any of the fruits promised them in their contract" because they "still have their liquidation preference and conversion rights." (DB at 4-5). These arguments fail for at least two reasons, and instead, as further explained below—under the lenient "plausibility" standard applicable on a motion to dismiss—the Maryland Supreme Court's answer to the Proposed Question will unquestionably determine the outcome of Cedar's motion to dismiss the Good Faith Duty claim.

*First*, pleading a breach of the Good Faith Duty does not require proving a breach of an express contractual entitlement. To the contrary, a plaintiff may assert a breach of the Good Faith Duty to hold a defendant accountable for misconduct that does not technically breach any express provision of a contract. *See, e.g.*, *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 184-85 (4th Cir. 2000) (even where an agreement did not contain an exclusivity clause, that did

---

[4] Defendants misattribute to Plaintiffs the view that certifying a question to the Maryland Supreme Court "is a routine matter" (DB at 2), but Plaintiffs never took that position. Rather, Plaintiffs simply contend that when the two-part test for certification is satisfied (as it is here), the certification procedure should be invoked to "promote judicial economy and the proper application of [Maryland]'s law." *Tapestry*, 599 F. Supp. 3d at 337.

"not end the analysis" since the Good Faith Duty gave rise to an obligation "to refrain from destructive competition," and the plaintiff had plausibly alleged that the defendant "willfully undermined its profitability and threatened its viability."); *Wal-Mart Real Est. Bus. Tr. v. Garrison Realty Invs., LLC*, 2022 WL 3647781, at *6 (D. Md. Aug. 24, 2022) (Bennett, J.) ("Although Section 6(a) does *not* require Garrison to perform a specific duty, Garrison was obligated not to interfere with Walmart's rights under this provision" pursuant to the covenant of good faith and fair dealing, and Garrison plausibly "frustrated" those rights and breached the Good Faith Duty when it sent a misleading letter that induced Baltimore County to deny a permit to Walmart).

Here, Plaintiffs allege that the Cedar Defendants (i) breached express provisions of the Articles Supplementary (*i.e.*, Sections 2, 4, and 7) (¶¶153-57), *and* (ii) breached "the duty of good faith and fair dealing implied in the Articles Supplementary under Maryland law by exercising its discretion in bad faith and deliberately structuring the Transactions with the intent of injuring Preferred Stockholders and depriving them of the fruits of the Articles Supplementary." (¶158). Thus, even if the Court concludes that Plaintiffs have not adequately plead a breach of the express provisions of the Articles Supplementary, it may still find, under the Broad View, that Plaintiffs have adequately plead a breach of the Good Faith Duty based on allegations that the Cedar Defendants acted in bad faith when they structured the Transactions with the intent of injuring Preferred Stockholders and depriving them of their rights under the Articles Supplementary. (¶¶ 159-70). Indeed, such intent was called out by a REIT analyst at Raymond James, who wrote that "the **driving factor** behind the **deal structure**" was to send the Preferred Stockholders "to purgatory." (¶129).

*Second*, it is absurd for Defendants to contend that Plaintiffs and other Preferred Stockholders are in as good a position now as they were before the Transactions closed *vis a vis*

the Liquidation Preference and the Conversion Right, or in any other respect. Before Defendants announced the Transactions, Cedar's Preferred Stock was deemed a secure investment due to the quality of Cedar's properties and Cedar's track record for paying dividends. (¶124). Further, on March 2, 2022, the day before Defendants announced the Transactions, the market value of Cedar's Preferred Stock was $151.4 million. (¶128). Finally, the Liquidation Preference was amply covered by Cedar's assets, and the Conversion Right was fully exercisable in the event of a Change in Control since Cedar's Common Stock was publicly-traded. (¶¶2-3, 52-54).

*After* Defendants announced the Transactions, the market price of the Preferred Stock foreseeably crashed (resulting in losses of nearly $100 million) (¶¶127-28), as Preferred Stockholders realized that authority to declare dividends on Cedar's Preferred Stock was shifting to Wheeler (¶¶8, 61, 111), which had not paid dividends to its own preferred stockholders for over four years (¶¶69-73). Moreover, the Transactions deeply impaired the Liquidation Preference by leaving insufficient equity in the Wheeler Properties to cover the Liquidation Preference. (¶¶11-12, 132-34). Finally, the Transactions gutted the Conversion Right by delisting Cedar's Common Stock (¶112), which leaves Preferred Stockholders unable to exercise the Conversion Right in any future Change of Control where the consideration paid for Cedar is other than cash (since when the consideration paid by an acquiror is other than cash, operation of the conversion ratio depends on the existence of publicly-traded Cedar Common Stock; ¶¶53-54). In sum, Cedar's breach of the Good Faith Duty decimated the value of the Preferred Stock, and substantially impaired the Liquidation Preference and the Conversion Right.

Defendants argue that the Articles Supplementary did not obligate them to leave the Wheeler Properties with sufficient equity to cover the Liquidation Preference. (DB at 5). This argument misses the point for several reasons. Leaving insufficient equity in the Wheeler

Properties to cover the Liquidation Preference was only one of numerous allegations of bad faith (¶¶158-70), and thus Cedar would remain liable for breaching the Good Faith Duty regardless of whether or not it was obligated to leave sufficient equity to cover the Liquidation Preference. Moreover, Cedar cannot maintain at this stage that even if it lied in its SEC filings about the value of the Wheeler Properties (¶¶130-34), and did not actually leave sufficient equity in them to cover the Liquidation Preference, this was nevertheless permitted by the Articles Supplementary. Having already lied to mislead Preferred Stockholders about the value of the Wheeler Properties, Cedar's bad faith cannot be undone. (Dkt. No. 46 at 9-10). Finally, by not taking the position—*until after it was sued*—that it was authorized by the Articles Supplementary to leave insufficient equity to cover the Liquidation Preference, Cedar waived that position. (*Id.* at 10 n.5).

Defendants cite the June 23, 2022 transcript of the Court's ruling on Plaintiffs' motion for a preliminary injunction (DB at 5), but ignore that the standards governing resolution of a motion to dismiss differ dramatically from those governing a preliminary injunction motion. (Dkt. No. 43 at 13-14 & n.4) (citing cases). Under the lenient "plausibility" standard governing motions to dismiss, the Court must accept Plaintiffs' allegations as true, and draw all reasonable inferences in favor of the Plaintiffs, and may not draw inferences in favor of the Defendants. (*Id.* at 13) (citing cases).[5]

---

[5] For example, in its June 23, 2022 ruling, the Court stated, "[c]ounsel for Wheeler noted that all of the various *allegations* against it by other preferred shareholders are just that, *allegations*." (Dkt. No. 30 at 14). But at the pleading stage, the Court must accept as true Plaintiffs' allegations that Wheeler proceeded here according to its "playbook"—previously employed against its own preferred shareholders—by acting in concert with the Cedar Defendants to crash the price of Cedar's Preferred Stock, and set itself up to acquire Cedar's Preferred Stock at a substantial discount via a tender offer (as corroborated by third parties). (¶¶ 9-10, 69-74, 129, 136-40; Dkt. No. 57 at 1-5; *see also Goldstein v. Denner*, 2022 WL 1671006, at *33 (Del. Ch. May 26, 2022) ("When a defendant acts in accordance with a known playbook, ***the plaintiff gets the benefit of an inference at the pleading stage that the defendant is following the playbook***.")).

The Court's recent decision in *Walmart*, *supra*, is particularly instructive. There, the defendant raised several counterarguments in support of its motion to dismiss the plaintiff's claim for breach of the Good Faith Duty. The Court rejected them all on the ground that, under the plausibility standard, it was "required to take [plaintiff's] allegations as true" (*Wal-Mart*, 2022 WL 3647781, at *7), and ***could not draw inferences "in [defendant's] favor*.*" Id.* at *5.

Here, when ruling on the motion for a preliminary injunction, the Court drew inferences in favor of the Defendants, acknowledging that "Plaintiffs had provided several pieces of *circumstantial evidence* that they argued collectively showed the Cedar defendants' primary motivation for exercising their contractual rights . . . was the injury to the plaintiff," but concluding that such evidence was "unpersuasive." (Dkt. No. 30 at 11).

On Defendants' motions to dismiss, however, "***the court's role is not to weigh the evidence*** or assess plaintiff's credibility, but rather to accept plaintiff's assertions as true." *Rohan v. Networks Presentation LLC*, 192 F. Supp. 2d 434, 437 (D. Md. 2002); *accord Attkisson v. Bridges*, 2021 WL 6123267, at *5 (D. Md. Dec. 27, 2021) (Bennet, J.). Indeed, it is well established that a complaint need not *prove* the plaintiff's case. *See Covey v. Assessor of Ohio Cnty*., 777 F.3d 186, 189, 195 (4th Cir. 2015) (complaint need only plead facts that constitute a plausible claim, not produce evidence); *Robertson v. Sea Pines Real Estate Cos*., 679 F.3d 278, 291 (4th Cir. 2012) ("*Iqbal* and *Twombly* do not require a plaintiff to prove his case in the complaint. The requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at his disposal at the outset. A complaint need not make a case against a defendant or forecast evidence sufficient to prove . . . the claim.").[6]

---

[6] To the extent, as the Court recognized, Plaintiffs have plead circumstantial evidence, the Supreme Court has recognized that "[c]ircumstantial evidence is not only sufficient, but may also be more

*(continued . . .)*

Instead, on a motion to dismiss, the standard is plausibility (not probability), and thus the Court must draw all reasonable inferences in favor of Plaintiffs even if it finds their allegations improbable. *See SD3, LLC v. Black & Decker (U.S.) Inc*., 801 F.3d 412, 418, 428 (4th Cir. 2015) (stressing that "***a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable***," and that "***Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations***.").

In sum, if the Broad View applies, then under the lenient "plausibility" standard applicable on a motion to dismiss, Plaintiffs' extensive allegations of bad faith (¶¶159-70) would require denial of Cedar's motion to dismiss the Good Faith Duty claim (especially when those allegations are corroborated by third parties; ¶¶129, 134, 138-39). Thus, the Maryland Supreme Court's answer to the Proposed Question will unquestionably be outcome determinative.

**B.   The Precise Scope of the Good Faith Duty Has Not Been Consistently Formulated by Maryland State and Federal Courts**

Defendants incorrectly contend that the Maryland Supreme Court has clearly defined the scope of the Good Faith Duty. They cite *Blondell v. Littlepage*, 991 A.2d 80 (Md. 2010) and *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170 (Md. 2012) as adopting the Narrow View (DB at 5-6), but at least three Maryland Supreme Court decisions have clearly and unambiguously adopted the Broad View, including the first Maryland Supreme Court decision (*Clancy*), and the most recent Maryland Supreme Court decision (*WSC*), to address the issue. (OB at 6-7). If anything, the Maryland Supreme Court decisions articulating the Broad View are far more persuasive since (i) *Blondell* misreads precedent (*see* Dkt. No. 46 at 5) (explaining how *Blondell*

---

certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

misread the Fourth Circuit's decision in *Eastern Shore*), and (ii) *CR-RSC* adopts the Narrow View in a tangential footnote without any analysis of the *Blondell* decision to which it cites. 56 A.3d at 208 n.53. Thus, if the Court declines to certify the Proposed Question to the Maryland Supreme Court, it should adopt the Broad View. (Dkt. No. 46 at 3-6).

Defendants purport to distinguish the three Maryland Supreme Court decisions cited by Plaintiffs (i.e., *Clancy*, *Questar*, and *WSC*) as presenting "special circumstances and relationships not present here." (DB at 6 (citing Dkt. No. 47 at 2-3)). But *none* of those decisions limit application of the Broad View to "special circumstances and relationships," and Defendants cite *no* cases that construe any of those three decisions so narrowly. Thus, there is no authority for the distinction that Defendants propose.

In particular, there is *no* language in *Clancy* limiting the Broad View to partnership agreements, and tellingly, subsequent cases have applied the Broad View formulated in *Clancy* to real estate contracts that were *not* partnership agreements. *See, e.g.*, *WSC/2005 LLC v. Trio Ventures Assocs.*, 190 A.3d 255, 266, 268 (2018) (applying *Clancy* to contract for sale of commercial real estate); *Layani v. Ouazana*, 2022 WL 11949038, at *7 (D. Md. Oct. 20, 2022) (Gallagher, J.) (applying *Clancy* to property sales and property management agreements); *Wal-Mart*, 2022 WL 3647781, at *6 (applying *Clancy* to commercial real estate lease).

Defendants mistakenly claim that the source of the Broad View articulated in *Clancy* was Section 9A-103(b)(5) of the Maryland Corporations Code governing partnership agreements (Dkt. No. 47 at 2), but in fact, as authority for the Broad View, *Clancy* cites the Fourth Circuit's decision in *Eastern Shore*, *supra*, which involved a shopping center lease (*not* a partnership agreement). *Clancy v. King*, 954 A.2d 1092, 1109 (Md. 2008); *see also Eastern Shore*, 213 F.3d at 178.

Defendants observe that *Blondell* cites *Clancy* (DB at 7), but that cite simply affirms the uncontested principle that "a contract in Maryland gives rise to an implied duty of good faith and fair dealing." *Blondell*, 991 A.2d at 90. *Blondell*, however, *never* cites *Clancy* as support for the Narrow View. Instead, it cites *Eastern Shore*. *Id.* at 90-91. But *Eastern Shore* ultimately adopts the Broad View, and so *Blondell* plainly misreads *Eastern Shore*. *See Eastern Shore*, 213 F.3d at 184 ("under the covenant of good faith and fair dealing, a party impliedly promises to *refrain from doing anything* that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them.").

Defendants muddled attempt to distinguish *Quester* fares no better. (DB at 8 n.5; Dkt. No. 47 at 3). Defendants claim that *Quester* "presented a case of first impression under Maryland law, i.e., whether a "termination for convenience clause" used in governmental military contracts could be enforced in private contracts, and, if so, what standard should be used to find whether such a clause was breached by a party terminating a contract for its convenience." (Dkt. No. 47 at 3). That is true, but does not change the fact that (citing *Clancy*) *Quester* adopted the Broad View as a general principle of contract law. *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 675 (Md. 2009) ('[U]nder the covenant of good faith and fair dealing, a party [exercising discretion must] *refrain from doing anything* that will have the effect of frustrating the right of the other party to receive the fruits of the contract between them.").

Defendants relegate their discussion of *WSC* to footnotes where they purport to distinguish the instant action as not involving a discretionary action taken in bad faith. (Dkt. No. 47 at 3 n.3; DB at 8 n.5). That argument also fails. The Articles Supplementary contemplate a broad range of transactions that may impact the rights of Preferred Stockholders, including transactions that effect a "Change of Control," as well as a "voluntary liquidation," a "merger," or a "sale of all or

substantially all of the Corporation's assets or business." (Dkt. No. 42-2 at §§4(a), (e), 5(j)). To the extent Cedar exercises its discretion to undertake any such transactions, the Good Faith Duty obligates Cedar to structure such transactions in good faith, i.e., without a significant motivation for the structure being to injure Preferred Stockholders and deprive them of rights under the Articles Supplementary. *See* Dkt. No. 46 at 10 (citing cases); Dkt. No. 30 at 10 ("A party also acts in bad faith when a primary motivation for asserting specific contractual rights is to injure the other party.").

Defendants claim that *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399 (Md. 2012) adopted the Narrow View, but that decision actually *questions* the Narrow View (articulated in *Parker v. Columbia Bank*, 604 A.2d 521 (Md. App. 1992)) on the ground that it "may be *under-inclusive* of the array of the potential applications of the doctrine of the implied covenant of good faith and fair dealing." 36 A.3d at 416. As authority that *Parker* got it wrong, *Polek* cites *Clancy* (which articulated the Broad View). *Id.*[7]

While *Polek* subsequently refers to "special circumstances," it does *not* introduce that concept as a limitation on the Broad View of the Good Faith Duty, but instead references "special circumstances" as a limitation on the principle that the Good Faith Duty cannot impose new obligations on parties. *Id.* ("Absent special circumstances, however, *no new obligations on the parties are imposed*, where the contract is silent, by the implied covenant of good faith and fair dealing."). As previously explained, that principle is not relevant here since Plaintiffs' claim for breach of the Good Faith Duty does *not* seek to impose additional contractual obligations on Cedar,

---

[7] *Polek* thus also supports Plaintiffs' critique of *Parker* as misattributing the Narrow View to the Maryland Supreme Court's decision in *Automatic Laundry Serv., Inc. v. Demas*, 141 A.2d 497 (Md. 1958), even though *Automatic Laundry* never adopts the Narrow View, and instead was cited in support of the Broad View by the Fourth Circuit in *Eastern Shore*. (*See* Dkt. No. 46 at 5).

but instead to hold Cedar liable for *failing to refrain from misconduct* that was intended to injure the Preferred Stockholders and deprive them of their rights under the Articles Supplementary. (*See* Dkt. No. 46 at 12-13).

> Defendants conclude with a string of redundant and illogical arguments:
>
> Indeed, the plaintiffs' argument that the Court should allow an inquiry into the good faith and fairness of the transaction to Cedar's preferred stockholders would be to rewrite the parties' contract – the Articles Supplementary – to impose new obligations on Cedar. It is a result that would stand the objective law of contracts applied in Maryland on its head by allowing any party to a contract to argue that even though the other party's actions did not breach the contract, a court should allow the finder of fact to determine if the result is "unfair." In short, the plaintiffs seek the creation of a standard that would effectively preclude a court from granting a motion to dismiss a breach of contract claim because a party alleges the other did not act in good faith. (DB at 8-9).

All of these arguments fail. *First*, as noted above, Plaintiffs do not seek to impose any new obligations on Cedar, but simply to hold Cedar liable for failing to refrain from misconduct. (¶¶ 159-70).

*Second*, as noted above, Maryland recognizes claims for breach of the Good Faith Duty precisely to address misconduct by a party that does not technically breach an express contractual provision. As such, rather than standing "Maryland [law] on its head," Plaintiffs assert a form of contract claim that Maryland has long recognized, *i.e.*, breach of the Good Faith Duty.

*Third*, claims for breach of the Good Faith Duty remain subject to dismissal where the allegations do not adequately plead bad faith. Here, however, the well-pleaded allegations of bad faith conduct are overwhelming (including several corroborated by third parties). (¶¶129, 134, 138-39, 159-70).[8]

---

[8] Defendants mistakenly claim that "plaintiffs' contention would also effectively create a stand-alone cause of action for breach of the implied covenant of good faith and fair dealing." (DB at 9 n.6). To the contrary, Plaintiffs have proceeded precisely as Maryland law has long contemplated,

*(continued . . .)*

**CONCLUSION**

For the foregoing reasons, and the arguments set forth in their Opening Brief, Plaintiffs

respectfully ask the Court to (i) certify the Proposed Question to the Supreme Court of Maryland,

and (ii) grant such other relief as the Court deems just and proper.

Dated: March 13, 2013                    Respectfully submitted,

                                         */s/ Donald J. Enright*

                                         **LEVI & KORSINSKY LLP**
                                         Donald J. Enright
                                         Bar Number: 13551
                                         1101 30th Street, NW, Suite 115
                                         Washington, DC 20007
                                         Tel: (202) 524-4290
                                         denright@zlk.com

                                         **WOHL & FRUCHTER LLP**
                                         Joshua E. Fruchter (*admitted pro hac vice*)
                                         25 Robert Pitt Drive, Suite 209G
                                         Monsey, NY 10952
                                         Tel: (845) 290-6818
                                         jfruchter@wohlfruchter.com

                                         **HEFFNER HURST**
                                         Matthew Heffner
                                         Matthew Hurst
                                         30 North LaSalle Street, Suite 1210
                                         Chicago, Illinois 60602
                                         Tel: (312) 346-3466
                                         mheffner@heffnerhurst.com
                                         mhurst@heffnerhurst.com

                                         **BERGER MONTAGUE PC**
                                         Michael Dell'Angelo
                                         Lawrence Deutsch
                                         Andrew Abramowitz

---

by pursuing their claim for breach of the Good Faith Duty within the same Count as their claims
for breach of express provisions of the Articles Supplementary. *See Tate v. Am. Gen. Life Ins. Co*.,
2022 WL 4225485, at *7 (D. Md. Sept. 13, 2022) (Bennet, J.) (Plaintiffs' allegations of bad faith
may be pursued under their breach of contract claim).

1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3062
ldeutsch@bm.net
aabramowitz@bm.net

*Counsel for Plaintiffs and [Proposed] Lead
Counsel for Putative Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 13, 2023, service required by Fed. R. Civ. P. 5(a) has been made of the foregoing Plaintiffs' Reply Memorandum Of Law In Further Support Of Motion To Certify A Question Of Law To The Supreme Court Of Maryland.


*/s/ Donald J. Enright*
(Bar. No. 13551)

- 16 -