IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JULIA KIM, et al.,                          *

      Plaintiffs,                          *

v.                                          *          Civil Action No. GLR-22-1103

CEDAR REALTY TRUST, INC., et al.,           *

      Defendants.                          *
                                   ***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on: (1) Defendants Abe Eisentat, Gregg A. Gonzalves, Sabrina Kanner, Darcy D. Morris, Steven G. Rogers, Richard H. Ross, Bruce J. Schanzer, and Sharon Stern's (collectively, "Director Defendants") Motion to Dismiss, (ECF No. 41); (2) Defendants Cedar Realty Trust Partnership, L.P., Cedar Realty Trust, Inc. ("Cedar"), and Wheeler Real Estate Investment Trust, Inc.'s ("Wheeler") Motion to Dismiss, (ECF No. 42); (3) Plaintiffs J. Renee Brennan Living Trust, Kenneth Kamholz, Julia Kim, Martin Novick, Scot Schroepfer, and David Sydney's ("Stockholder Plaintiffs") Motion to Strike, or in the Alternative, Take Judicial Notice, (ECF No. 51); and (4) Stockholder Plaintiffs' Motion to Certify Question of Law to the Maryland Supreme Court, (ECF No. 60). The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motions to Dismiss, grant the Motion to Strike, and deny the Motion to Certify Question of Law.

# I.   BACKGROUND

## A.   **Factual Background**[1]

Plaintiffs are preferred stockholders of Defendant Cedar. (Am. Compl. ¶ 1, ECF No. 39). Cedar Realty Trust Partnership, L.P. is a limited partnership to and through which Cedar Realty Trust, Inc. contributes assets and conducts its business. (Id. ¶ 26). Cedar and Wheeler are real estate investment trusts that focus on the ownership, operation, and redevelopment of shopping centers. (Id. ¶¶ 25, 27). Stockholder Plaintiffs allege that they suffered monetary losses of almost $100 million after Cedar's Board of Directors, the Director Defendants, entered into two transactions: (1) a real estate sale in which Cedar sold shopping centers and redevelopment projects to third parties for $913 million, and (2) a merger in which Cedar became a wholly-owned subsidiary of Wheeler. (Id. ¶¶ 1–3). Under the merger, Cedar still nominally owns some of its properties, but Director Defendants were terminated, along with all of Cedar's executives and employees. (Id. ¶¶ 4–5). Cedar delisted and cancelled its common stock, cashing out common stockholders at $29 per share and further distributed the proceeds of the real estate sale to common stockholders. (See id. ¶¶ 3–4). All Director Defendants were common stockholders—only one owned a de minimis amount of preferred stock. (Id. ¶ 4).

By contrast, the preferred stockholders were not cashed out—they remain as stockholders of Wheeler. (See id. ¶ 8). Wheeler is allegedly financially distressed and it

---

[1] Unless otherwise noted, the Court takes the following facts from Stockholder Plaintiffs' Amended Complaint (ECF No. 39) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

has a "long history of preferred shareholder oppression, management dysfunction, poor performance and declining market cap." (Id. ¶ 15). Cedar and the Director Defendants previously rejected Wheeler's proposal for a merger in 2017 for these reasons. (Id. ¶ 65). Further, after the merger was announced on March 2, 2022, Cedar's preferred stock fell considerably. (Id. ¶¶ 126−27). As of August 2022, the market cap of the preferred stock had fallen from $151 million to $52 million. (Id. ¶ 8).

Stockholder Plaintiffs allege that Defendants deliberately structured the merger in bad faith to benefit the common stockholders and damage the preferred stockholders. (Id. ¶ 9). They further contend that the drop in market cap of the preferred stock will allow Wheeler to acquire the stock at depressed rates, so that it can reduce the cost of its obligations to preferred stockholders. (Id.). Alternatively, because Cedar's preferred stockholders do not enjoy a mandatory redemption right, Wheeler could allow the preferred stock to languish, and the preferred stockholders could not compel Wheeler to redeem their shares at par. (Id. ¶ 10). Stockholder Plaintiffs also allege bad faith because Cedar and Director Defendants misrepresented the value of Wheeler's properties at $291.3 million in public filings, but the actual value was $236.4 million. (Id. ¶ 12). Wheeler's equity totaled about $110 million, which was insufficient to cover the $161.3 million liquidation. (Id.).

The preferred stockholders had a Contract with Cedar called the Articles Supplementary ("the Articles" or "the Contract"). (Id. ¶ 46). In Section 4(a), the Articles provide that "preferred stock ranks above common stock with respect to dividend rights" in the context of liquidation or winding up. (Id. ¶ 47). The liquidation preference in Section 4(a) provides:

> In the event of <u>any</u> voluntary or involuntary liquidation, dissolution or winding up of the Corporation (referred to herein sometimes as a "liquidation"), the holders of Series C Preferred Stock then outstanding shall be entitled to receive out of the assets of the Corporation legally available for distribution to stockholders (after payment or provision for payment of all debts and other liabilities of the Corporation) the sum of (i) the liquidation preference of $25.00 per share and (ii) an amount equal to any accrued and unpaid dividends (whether or not declared) to the date of payment, <u>before any distribution of assets is made to holders of Common Stock (as defined in the Charter)</u> or any equity securities that the Corporation may issue that rank junior to the Series C Preferred Stock as to liquidation rights.

(<u>Id.</u> ¶ 48). Section 4(e) provides that a merger or asset sale does not constitute a liquidation or winding up:

> None of a consolidation or merger of the Corporation with or into another entity, the merger of another entity with or into the Corporation, a statutory share exchange by the Corporation or a sale, lease, transfer or conveyance of all or substantially all of the Corporation's assets or business shall be considered a liquidation, dissolution or winding up of the Corporation.

(<u>Id.</u> ¶ 49). Stockholder Plaintiffs allege that the merger and the asset sale constituted a liquidation, and thus they were entitled to the liquidation preference. (<u>Id.</u> ¶¶ 153–55).

The Articles also entitle Preferred Stockholders to a conversion right upon a change of control at Cedar. (<u>Id.</u> ¶ 53). Change of control is defined in Section 5(j):

> [A] <u>"Change of Control" is when,</u> after the original issuance of the Series C Preferred Stock, the following have occurred and are continuing (x) the acquisition by any person, including any syndicate or group deemed to be a "person" under section 13(d)(3) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), of beneficial ownership, directly or indirectly, through a purchase, merger or other acquisition transaction or series of purchases, mergers or other acquisition transactions of shares of the Corporation <u>entitling that person</u>

4

> to exercise more than 50% of the total voting power of all shares of the Corporation entitled to vote generally in elections of directors . . . , and (y) following the closing of any transaction referred to in clause (x), neither the Corporation nor the acquiring or surviving entity has a class of common securities (or American Depositary Receipts ("ADRs") representing such securities) listed on the New York Stock Exchange (the "NYSE"), the NYSE American, LLC exchange (the "NYSE American"), or the NASDAQ Stock Market (the "NASDAQ"), or listed or quoted on an exchange or quotation system that is successor to the NYSE, the NYSE American or NASDAQ . . . .

(Id. ¶ 55) (emphasis in original). Stockholder Plaintiffs allege that the merger caused a change of control, and therefore the Defendants should have allowed them to exercise their conversion rights. (Id. ¶¶ 156−57).

**B.   Procedural History**

Stockholder Plaintiffs filed their original Complaint on May 6, 2022. (ECF No. 1). On June 2, 2022, they filed a Motion for Preliminary Injunction asking the Court to compel Cedar to seek their approval for the merger and to permit them to exercise their alleged contractual conversion rights if the merger was approved. (ECF No. 11). After oral argument on June 22 and 23, 2022, the Court denied the Motion for Preliminary Injunction. (ECF No. 28).

Stockholder Plaintiffs filed an Amended Complaint (ECF No. 39) on September 9, 2022 alleging: breach of contract against Director Defendants and Cedar (Count I); breach of fiduciary duty against Cedar (Count II); tortious interference with contractual rights against Wheeler (Count III); and aiding and abetting breaches of fiduciary duty against Wheeler (Count IV). (Am. Compl. ¶¶ 151−85). On October 7, 2022, Defendants filed

Motions to Dismiss. (ECF Nos. 41, 42). Stockholder Plaintiffs filed Oppositions on November 21, 2022. (ECF Nos. 43, 46). Defendants filed Replies on December 21 and 27, 2022. (ECF Nos. 48, 50). On December 27, 2022, Stockholder Plaintiffs filed the Motion to Strike, or in the Alternative, Take Judicial Notice. (ECF No. 51).[2] Defendants filed Oppositions on January 9 and 10, 2023. (ECF Nos. 52, 55). Stockholder Plaintiffs filed a Reply on January 17, 2023. (ECF No. 57). On February 2, 2023, Stockholder Plaintiffs also filed a Motion to Certify Question of Law to the Maryland Supreme Court. (ECF No. 60). Cedar and Wheeler filed an Opposition on February 24, 2023. (ECF No. 73). Stockholder Plaintiffs filed a Reply on March 13, 2023. (ECF No. 76).

## II.    DISCUSSION

### A.    **Standards of Review**

#### 1.    **Motion to Dismiss**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[2] Stockholder Plaintiffs move to strike an Exhibit attached to Director Defendants' Reply to the Motion to Dismiss. (ECF No. 48-1). The Exhibit is a document that Wheeler filed with the Securities and Exchange Commission showing Wheeler paid its preferred stockholders their preferential dividend in the first fiscal quarter after the merger. (Mot. Strike at 1, ECF No. 51).

A motion to strike under Federal Rule 12(f) is an appropriate remedy for the elimination of "redundant, immaterial, impertinent, or scandalous matter" in any pleading. Fed.R.Civ.P. 12(f). Here, the Court will grant the Motion to Strike because it finds the document immaterial at this state in the litigation, where the Court will find that Stockholder Plaintiffs' claims must be dismissed as a matter of law. The Court makes no factual findings as to whether Wheeler is financially stable or whether Wheeler regularly pays dividends to its preferred stockholders. The Court notes that granting the Motion to Strike will not prejudice Defendants because even if the document was considered, it would have no effect on the Court's analysis herein.

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012), aff'd, 546 F.App'x 165 (4th Cir. 2013)).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**2.      Motion to Certify Question of Law**

The State of Maryland has authorized federal courts to certify unsettled questions of state law to its State Supreme Court. See Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 12-603; Md. Rule 8-305. Under the Maryland Uniform Certification of Questions of Law Act, CJP § 12-601 et seq. (the "Act"), the Supreme Court of Maryland may "answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." CJP § 12-603. The purpose of the Act is "to promote the widest possible use of the certification process in order to promote judicial economy and the proper application of [Maryland]'s law." Proctor v. Wash. Metro. Area Transit Auth., 990 A.2d 1048, 1056 (Md. 2010) (quoting Uniform Certification of Questions of Law Act § 3 cmt. (1995)) (alterations in original). The decision of whether to grant a motion to certify "rests in the sound discretion of the federal court." Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974).

**B.      Analysis[3]**

**1.      Director Defendants' Motion to Dismiss**

Director Defendants move to dismiss Stockholder Plaintiffs' claims for breach of contract (Count I) and breach of fiduciary duty (Count II). (Cedar Dirs.' Mem. Supp. Mot.

---

[3] "A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits." Perini/Tompkins Joint Venture v. Ace Am. Ins. Co., 738 F.3d 95, 100 (4th Cir. 2013). Therefore, the Court will apply Maryland law to the Plaintiffs' claims.

Dismiss ["Dirs.' Mot. Dismiss"] at 6, 8, ECF No. 41-1).[4] As to the breach of contract claim, Director Defendants argue that because they are not parties to the Articles, they cannot be liable for its breach. (Id. at 12). Stockholder Plaintiffs make no argument to the contrary and seemingly concede this point. Indeed, under Maryland law, "a person cannot be held liable under a contract to which he was not a party." Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc., 728 A.2d 783, 794 (Md.Ct.Spec.App. 1999); see also Waypoint Mgmt. Consulting, LLC v. Krone, No. ELH-19-2988, 2022 WL 2528465, at *27 (D.Md. July 6, 2022). Accordingly, Stockholder Plaintiffs' claim for breach of contract against Director Defendants will be dismissed.

The Court now turns to the claim for breach of fiduciary duty. Stockholder Plaintiffs allege that Director Defendants owed fiduciary duties to them as preferred stockholders, including a "duty to act in good faith and maximize value for those stockholders when selling the company." (Am. Compl. ¶ 173). Director Defendants allegedly breached those duties "by exercising their discretion in bad faith and deliberately structuring the Transactions with the intent of injuring Preferred Stockholders and depriving them of the fruits of the Articles Supplementary." (Id. ¶ 174). Director Defendants counter that they did not owe any such fiduciary duties to preferred stockholders because the Contract alone governs the Director Defendants' responsibilities to the preferred stockholders in the

---

[4] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

merger context.[5] (Dirs.' Mot. Dismiss at 8–9). At bottom, the Court agrees with the Director Defendants.

Preferred stockholders are members of a corporation and the board generally owes them fiduciary duties like those owed to common stockholders. See Leviness v. Consol. Gas, Elec. Light & Power Co. of Balt., 80 A. 304, 306 (Md. 1911) ("The preferred stockholder, though he holds a lien by way of special security, is nevertheless a member of the corporation . . . . He is expressly invested with all the incidents, rights, privileges, immunities and liabilities of a stockholder."). "The difference between common stock and preferred stock lies in preferred stock's preferential rights, which are defined by contract (in this case the Articles) and can include a broad range of terms and conditions." Poling v. CapLease, Inc., 2016 WL 1749803, at *3 (Md.App. May 3, 2016); LC Cap. Master Fund, Ltd. v. James, 990 A.2d 435, 447 (Del.Ch. 2010) ("Generally the rights and preferences of preferred stock are contractual in nature.").[6] When a claim "arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim." Nemec v. Shrader, 991 A.2d 1120, 1129 (Del. 2010). Further, when the contract expressly provides rights to preferred stockholders, additional "preferences and limitations will not be presumed or implied." Poling, 2016 WL 1749803, at *3. Stated differently, directors

---

[5] Director Defendants also argue that even if they have a fiduciary duty to protect Stockholder Plaintiffs' interests during the merger, that their conduct is protected by Maryland's business judgment rule. (Dirs.' Mot. Dismiss at 12). Because the Court finds that Director Defendants did not owe these fiduciary duties, it will not address this second argument.

[6] Maryland courts frequently look to Delaware law for guidance on corporate matters. Oliveira v. Sugarman, 152 A.3d 728, 736 n.4 (Md. 2017).

owe fiduciary duties to preferred stockholders "where the right claimed by the preferred is not to a preference as against the common stock but rather a right shared equally with the common." LC Capital, 990 A.2d at 447 (internal quotation marks omitted). Further, when the interests of the preferred and common stockholders are at odds, the board must typically honor its obligations to the common stockholders:

> While the board . . . could have made a different business judgment, in my opinion, it violated no duty owed to the preferred in not doing so. The special protections offered to the preferred are contractual in nature. The corporation is, of course, required to respect those legal rights. But . . . generally it will be the duty of the board, where discretionary judgment is to be exercised, to prefer the interests of common stock as the good faith judgment of the board sees them to be to the interests created by the special rights, preferences, etc., of preferred stock, where there is a conflict.

Id. at 449 (quoting Equity-Linked Invs., L.P. v. Adams, 705 A.2d 1040, 1042 (Del.Ch. 1997)).

Here, the Articles expressly provide for the Stockholder Plaintiffs' rights under a merger, and thus the fiduciary duty claim is duplicative of the contract claim and must be dismissed. See Nemec, 991 A.2d at 1129. The crux of the breach of fiduciary duty claim is that Director Defendants acted in bad faith because they did not structure the merger to trigger the liquidation preference or conversion rights. (See Am. Compl. ¶ 174). Because the Articles directly speak to those rights, the Contract sets forth the bounds of the board's fiduciary duties. See Poling, 2015 WL 13309114, at *9 (dismissing fiduciary duty claim because "the claimed breach of fiduciary duty relies upon the allegations that defendants' conduct contravenes the Articles Supplementary"). The Contract does not provide for any

fiduciary duties related to mergers, and therefore the Court cannot impute any additional, unwritten responsibilities onto Director Defendants. See id. at *3.

Stockholder Plaintiffs argue that Director Defendants owed them fiduciary duties because they assert "a right shared equally with the common [stockholders]." (Pls.' Mem. Opp'n Def. Dirs.' Mot. Dismiss ["Opp'n Def. Dirs.' Mot."] at 16, ECF No. 43). Their argument misses the mark because the interests of the preferred and common stockholders were at odds during the merger. (See Am. Compl. 4−5 (comparing the common stockholders' gains to the preferred shareholders' losses)). Director Defendants owed a duty to maximize the company's value to the common while the preferred stockholders had only limited conversion rights to be cashed out in a merger. (See Am. Compl. ¶ 53). In these circumstances, the law is clear that it is not a breach of fiduciary duty to honor the board's obligations to the common shareholders. See LC Capital, 990 A.2d at 445, 451 (rejecting preferred shareholders' argument that the board had a duty to make a fair allocation of the merger consideration between the preferred and common stockholders where their interests were at odds and the contract did not provide for such a right and stating, "To accept the preferred stockholders' view is to, in essence, give them leverage that they did not fairly extract in the contractual bargain").[7]

---

[7] Stockholders Plaintiffs failed to show why such precedent would not apply here. Instead, they argue broadly that directors owe fiduciary duties to preferred shareholders under certain circumstances and that Maryland law recognizes an independent cause of action for breach of fiduciary duty. (See Opp'n Def. Dirs.' Mot. at 22−23). While the Court agrees with both these contentions, neither one is helpful to Stockholder Plaintiffs in establishing the viability of their fiduciary duty claim.

Accordingly, Stockholder Plaintiffs' claims for breach of contract (Count I) and breach of fiduciary duty against Director Defendants (Count II) will be dismissed.

### 2.      Cedar and Wheeler's Motion to Dismiss

Cedar and Wheeler have moved to dismiss Stockholder Plaintiffs' claims for breach of contract against Cedar (Count I), tortious interference with contractual rights against Wheeler (Count III), and aiding and abetting a breach of fiduciary duty against Wheeler (Count IV). (Mem. Supp. Cedar Wheeler Mot. Dismiss ["CW Mot. Dismiss"] at 6, ECF No. 42-1). The Court will examine each claim in turn.

As to the breach of contract claim, Stockholder Plaintiffs allege that Cedar breached the Contract in three ways: (1) failing to provide priority liquidation payments to preferred stockholders, (Am. Compl. ¶¶ 153−55); (2) failing to allow preferred stockholders to exercise their conversion rights, (id. ¶¶ 156−57); and (3) structuring the merger in bad faith to injure the preferred shareholders, thereby breaching the implied covenant of good faith and fair dealing, (id. ¶¶ 158−71). Cedar argues that it did not breach the Contract because there was no liquidation or change of control to trigger Stockholder Plaintiffs' rights to liquidation payments or conversion. (CW Mot. Dismiss at 13). At bottom, Court agrees with Cedar.

"To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." All Weather, Inc. v. Optical Sci., Inc., 443 F.Supp.3d 656, 666 (D.Md. 2020). Further, "[t]he claim must 'allege with certainty and definiteness facts showing a contractual obligation.'" Yarn v. Hamburger L. Firm, LLC, No. RDB-12-3096, 2014 WL 2964986, at

*3 (D.Md. June 30, 2014) (quoting <u>RRC Ne., LLC v. BAA Md., Inc.</u>, 994 A.2d 430, 442 (Md. 2010)). If the contract is ambiguous, it is generally not subject to resolution at the motion to dismiss stage because contractual construction is a question of fact. <u>See</u> <u>Horlick v. Cap. Women's Care, LLC</u>, 896 F.Supp.2d 378, 394 (D.Md. 2011). "A contract is ambiguous if susceptible of two reasonable interpretations." <u>Id.</u> (internal quotation marks omitted).

### a.   Breach of Contract – Liquidation Preference

First, as to the liquidation preference, Section 4(a) of the Articles provides that preferred stockholders are entitled to a priority payment in "the event of any voluntary or involuntary liquidation." (Am. Compl. ¶ 48). Section 4(e) further explains:

> None of a consolidation or merger of the Corporation with or into another entity, the merger of another entity with or into the Corporation, a statutory share exchange by the Corporation or a sale, lease, transfer or conveyance of all or substantially all of the Corporation's assets or business shall be considered a liquidation, dissolution or winding up of the Corporation.

(<u>Id.</u> ¶ 49). Stockholder Plaintiffs argue that this provision is ambiguous because it is unclear whether Section 4(e) carves out all mergers from the liquidation preference, or whether it only carves out mergers or asset sales when the transactions do not feature "indicia of a liquidation (such as a discharge of all debts, distribution of all proceeds to shareholders, and termination of all employees)." (Pls.' Mem. Opp'n CW Mot. Dismiss ["Opp'n CW Mot."] at 26, ECF No. 46). Stockholder Plaintiffs also contend that the asset sale and the merger, taken together, constitute a <u>de facto</u> liquidation. (<u>See</u> Am. Compl. ¶ 51).

The Court finds the Contract's language to be clear and unambiguous in its assertion that "none of a consolidation or merger" is a liquidation. (Id. ¶ 49) (emphasis added). Stockholder Plaintiffs urge the Court to re-write the Contract to include limiting language, but the Court is prohibited from doing so by law. See Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 307 (4th Cir. 2020) ("[I]t is improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.") (cleaned up). There is no dispute that a merger took place, that Cedar remains in existence as a Wheeler subsidiary, and that it owns assets worth $236 million. (See Opp'n CW Mot. at 30). Accordingly, there was no liquidation and Cedar did not breach the Contract by denying Plaintiffs their liquidation preference.

In support of its argument for liquidation, Stockholder Plaintiffs cite Quadrangle Offshore (Cayman) LLC v. Kenetech Corp, No. 16362NC, 1999 WL 893575 (Del.Ch. Oct. 13, 1999). (Opp'n CW Mot. at 28). The contract in Quadrangle, like the one in the instant case, specified that a sale of assets was not a liquidation, but the court decided to accord the asset sales "cumulative significance" in determining whether a liquidation had occurred because "[t]he sale of assets is such a fundamental or integral part of a liquidation that it is almost impossible to give meaning to the term liquidation without considering this element. Id. at *11.

Ultimately, Quadrangle does not support Stockholder Plaintiffs' argument because the court did not identify a contractual ambiguity or otherwise invalidate the contract's language, and it found that liquidation had not occurred. Id. In fact, the court specifically stated that "a merger or sale of assets might result in the corporation's liquidation of its

15

assets, but the corporation could remain in business. Thus, this carve-out protects the board's freedom to engage in a merger or sale of assets without a challenge from the preferred." Id. at *10. Accordingly, the Court will dismiss Stockholder Plaintiffs' claim for breach of the liquidation preference clause.

### b.    Breach of Contract – Conversion Rights

Second, regarding the alleged conversion rights, Section 7 of the Articles entitles preferred stockholders to convert their stock to common stock upon a change of control of Cedar. (Am. Compl. ¶ 52). Section 5(j) provides that:

> a "Change of Control" is when, after the original issuance of the Series C Preferred Stock, the following have occurred and are continuing (x) the acquisition by any person, including any syndicate or group deemed to be a "person" under section 13(d)(3) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), of beneficial ownership, directly or indirectly, . . . of the Corporation entitling that person to exercise more than 50% of the total voting power of all shares of the Corporation entitled to vote generally in elections of directors . . . , and (y) following the closing of any transaction referred to in clause (x), neither the Corporation nor the acquiring or surviving entity has a class of [publicly traded] common securities.

(Id. ¶ 55). There is no dispute that the merger triggered subsection (x) above when Wheeler acquired 100% of Cedar's common stock. (See id. ¶ 56). The parties also agree that Wheeler's common stock is publicly traded. (See id. ¶ 62). The parties disagree, however, about how to interpret subsection (y). On the one hand, Stockholder Plaintiffs argue that subsection (y) means that their conversion rights are triggered when "either the acquiring entity (i.e., Wheeler) or the surviving entity (i.e., Cedar) no longer have publicly-traded stock." (Opp'n CW Mot. at 22). On the other hand, Cedar contends that the "neither/nor"

16

clause means that <u>both</u> Wheeler and Cedar must not have publicly-traded stock. (CW Mot. Dismiss at 19). Therefore, accordingly to Cedar, no change of control occurred because Wheeler still has publicly traded stock. (<u>Id.</u>). The Court agrees with Cedar.

Plaintiffs argue that the use of "or" where the Contract says "acquiring or surviving entity" supports their interpretation of the Contract, or at a minimum, it creates an ambiguity that must be resolved against the drafter (Cedar). (Opp'n CW Mot. at 22). Stockholder Plaintiffs cite <u>Plank v. Cherneski</u>, where the court stated that "or" is "generally interpret[ed] . . . in the disjunctive sense," meaning that the word indicates an alternative. 231 A.3d 436, 478 (Md. 2020). Nevertheless, this Court finds that the language of the Contract clearly and unambiguously means that both Wheeler and Cedar cannot have publicly traded stock for a change of control to occur. While "or" may generally be interpreted "to indicate an alternative," the word must be read in context, and the Court finds that the plain language of the clause at issue does not support Stockholder Plaintiffs' position. <u>See Plank</u>, 231 A.3d at 478. Accordingly, the Court finds that no change of control has occurred and thus Cedar did not breach the Contract by denying Plaintiffs their conversion rights.

### c.       Breach of Contract – Duty of Good Faith and Fair Dealing

The Court now turns to Stockholder Plaintiffs' final argument in support of its breach of contract claim: breach of the duty of good faith and fair dealing. (Am. Compl. ¶ 158). It is well-settled law that Maryland does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. <u>See, e.g.</u>, <u>Mount Vernon Props., LLC v. Branch Banking and Tr. Co.</u>, 907 A.2d 373, 381 (Md.App. 2006). Because

the Court has already dismissed Stockholder Plaintiffs' claims for breach of the liquidation preference and conversion rights under the Articles, the claim for breach of the duty of good faith and fair dealing must also fail. Thus, the Court will dismiss Count I in its entirety.

### d.   Tortious Interference with Contractual Rights

Stockholder Plaintiffs allege that Wheeler knew about the Articles and Director Defendants' duties to preferred stockholders, and that Wheeler interfered with Plaintiffs' contractual rights by cooperating with Director Defendants to structure the merger to injure Plaintiffs. (Count III) (Am. Compl. ¶ 179). Wheeler moves to dismiss Stockholder Plaintiffs' claim for tortious interference with contractual rights because the Director Defendants did not breach the contract and even if they did, Stockholder Plaintiffs failed to plead sufficient facts to establish their claim. (CW Mot. Dismiss at 29−30).

The Court has already found that Director Defendants did not breach the Contract, and breach is a required element of Stockholder Plaintiffs' claim. See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 455 F.Supp.2d 399, 426 (D.Md. 2006) ("The elements of tortious interference with contract under Maryland law are: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff."). Because Stockholder Plaintiffs have not established breach, their claim will be dismissed.

### e.     Aiding and Abetting Breaches of Fiduciary Duty

Stockholder Plaintiffs allege that Wheeler aided and abetted Cedar Defendants'

breach of fiduciary duty. (Am. Compl. ¶¶ 181−85). Wheeler moves to dismiss Stockholder

Plaintiffs' claim because there was no breach of fiduciary duty and even if there had been,

Stockholder Plaintiffs did not allege sufficient facts to establish their claim. (CW Mot.

Dismiss at 30−33).

Like the claim for tortious interference with contractual rights, the claim for aiding

and abetting breaches of fiduciary duty must fail because Stockholder Plaintiffs did not

establish a breach. To state a claim for aiding and abetting a breach of fiduciary duty, there

must be an underlying breach or tort. See Alleco Inc. v. Harry & Jeanette Weinberg Found.,

Inc., 665 A.2d 1038, 1049−50 (Md. 1995). Here, the Court has already determined that

Director Defendants did not breach their fiduciary duties, and therefore this claim will be

dismissed.

### 3.     Motion to Certify Question of Law

Plaintiffs move to certify the following question of law to the Supreme Court of

Maryland:

> Does the duty of good faith and fair dealing implied in all
> contracts under Maryland law obligate a party to a contract to
> (i) broadly refrain from any action that would have the effect
> of injuring or frustrating the right of the counterparty to receive
> the fruits of the contract between them ("Broad View") (see,
> e.g., Clancy v. King, 954 A.2d 1092, 1109 (Md. 2008)), or
> (ii) narrowly refrain only from actions that would prevent the
> counterparty from performing its obligations under the contract

("Narrow View") (see, e.g., Blondell v. Littlepage, 991 A.2d
80, 90−91 (Md. 2010))?

(Mem. Supp. Mot. Certify Question Law at 5, ECF No. 60-1).

The Supreme Court of Maryland "may answer a question of law certified to it by a
court of the United States . . . if the answer may be determinative of an issue in pending
litigation in the certifying court and there is no controlling appellate decision, constitutional
provision, or statute of this State." CJP § 12-603. Here, Stockholder Plaintiffs' question
regarding fiduciary duties will not be determinative of any issue in this case because
Stockholder Plaintiffs' claims for breach of contract are meritless, and the claim for breach
of duty of good faith and fair dealing must also be dismissed because it cannot stand as an
independent cause of action. See Mount Vernon Props., 907 A.2d at 381. Accordingly, the
Court declines to certify the question and it will deny the Motion.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the Motions to Dismiss (ECF Nos.
41, 42)[8] and the Motion to Strike (ECF No. 51), and deny the Motion to Certify Question
of Law (ECF No. 60). A separate Order follows.

---

[8] The Court notes that Stockholder Plaintiffs request leave to amend their Amended
Complaint if the Court grants the Motions to Dismiss. (Opp'n CW Mot. at 38). Stockholder
Plaintiffs did not move for leave to amend under Federal Rule 15, nor did they comply with
Local Rule 103.6, which requires the movant to submit a proposed amended complaint and
a redlined comparison. Further, Stockholder Plaintiffs did not provide any details or
explain how an amendment would cure Amended Complaints' deficiencies. See Edell &
Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001)
(requiring the movant to demonstrate that the amendment is not prejudicial or futile).
Accordingly, Stockholder Plaintiffs' request to amend will be denied.

Entered this 1st day of August, 2023.


_____/s/_____
George L. Russell, III
United States District Judge
